ARTHUR EDMONDS, J. P. CLARK, JOHN BRENENION and PATRICK
KELLY, sueing for themselves and in behalf of all others
similarly situated, Plaintiffs and Appellants *v.* PETER
HERBRANDSON, C. A. DIGNESS, ALBERT OLSON, G. A. HAR-
STAD and A. STEENSON, as the Board of County Commis-
sioners in and for said County of Traill; KNUT J. NOM-
LAND, as Treasurer of said County; ASA SARGENT, as
Register of Deeds in and for said County; OLIVER P.
CLARK, as Clerk of the District Court in and for said
County; H. A. LANGLIE, as Auditor of said County; SVEN
N. HESKIN, as Sheriff of said County; J. O. KJELSBERG,
as Judge of Probate of said County; and F. W. AMES, as
States Attorney of said County, Defendants and Respond-
ents.

## Constitutional Law—Special Acts—Change of County Seat— Legislative Powers.

1. Chapter 56 of the Laws of 1890, regulating the relocation of county seats, is unconstitutional, as being repugnant to § 69 of article 2 of the state constitution, prohibiting special legislation locating or changing county seats, because it arbitrarily classifies counties, putting into one class all counties, wherein at the date of the act the court house and jail were worth the sum of $35,000, and forever excluding from this class all counties coming within its description in the future, placing all such counties permanently in a separate class.

2. The constitutional inhibition against special legislation does not prevent classification, but such classification must be natural, not arbitrary; it must stand upon some reason, having regard to the character of the legislation of which it is a feature.

3. It is not the form, but the effect, of a statute which determines its special character.

4. An act relating to all the objects to which it should relate, except one, is as much special legislation as if it had embraced only the object excluded.

5. It is purely a legislative question, subject to no review by the courts, whether in a given case a general or special law should be enacted under § 70 of article 2 of the state constitution, which provides that "in all other cases where a general law can be made applicable no special law shall be enacted."

(Opinion filed Dec. 5, 1891. Rehearing denied Jan. 12, 1892.)

*A PPEAL* from district court, Traill county; Hon. WILLIAM B. McCONNELL, Judge.

*A. B. Levisee, Ball & Smith,* and *Taylor Crum,* for appellants. *F. W. Ames* and *J. F. Selby,* for respondents. *Joslin & Regan* and *Carmody & Leslie,* for respondents on rehearing.

Action by Arthur Edmonds and others against Peter Herbrandson and others, officers of Traill county, to restrain them from removing the county records from Caledonia to Hillsboro. Judgment for defendants. Plaintiffs appeal. Reversed, construing chapter 56, Laws of 1890, as unconstitutional.

A. B. Levisee, Ball & Smith, and Taylor Crum, for appellants:

The act in controversy offends against our constitutional provision that "all laws of a general nature shall have a uniform operation." The authorities in states having the same provision are all to the effect that unless the law clearly has a uniform operation it cannot be considered as a law of a general nature. Appeal of City of Scranton School District, 6 At. Rep. 158; Ohio *ex rel.* v. Covington, 29 Ohio St. 102; Kelley v. State, 6 Ohio St. 269; Nichols v. Walter, 33 N. W. Rep. 800; State v. Mayor, 18 At. Rep. 694; State v. Board of Freeholders, 11 At. Rep. 135; McCarthy v. Commonwealth, 2 At. Rep. 423. It has been held that the exception of one county from the operation of an act makes it local and special. Davis v. Clark, 106, Pa. St. 384.

F. W. Ames and J. F. Selby, for respondents:

The act is constitutional and should be sustained. Vermont Loan & Trust Co. v. Whithed, *ante;* State v. Oblinger, 34 N. W. Rep. 164; Board of Freeholders v. Board of Freeholders, 19 At. Rep. 972; People *ex rel.* v. Plank Road Co., 86 N. Y. 1.

The opinion of the court was delivered by

CORLISS, C. J. The plaintiffs, as taxpayers of Traill county, in this state, instituted this action against the members of the board of county commissioners and the other officers of that

county to secure an injunction perpetually restraining them, their successors in office, clerks, deputies, agents, and servants, from removing, or attempting to remove, the books, papers, records, etc., belonging at the county seat of such county from such county seat at Caledonia to the city of Hillsboro, in said county, and from locating or establishing, or attempting to locate or establish, the repective offices of such county or any of the same, at such city of Hillsboro, under and in pursuance of the votes cast at a certain election held for that purpose under the provisions of chapter 56 of the Laws of 1890. It is undisputed that at this election all the requirements of this statute were fully complied with. In fact no question upon this appeal is presented, except the single one of the constitutionality of this act. By it a radical change in the manner of relocating county seats was made. Before its enactment, § 565, Comp. Laws, gave the rule. It required a petition of two-thirds of the qualified voters of the county as a condition precedent to the ordering and holding of an election, and two-thirds of the votes actually cast at such election were essential to choice. The act of 1890 requires a petition signed by only one-third of the qualified voters of such county, as shown by the vote cast at the last preceding election for state officers holden in such county, to compel the ordering of an election to relocate the county seat, and three-fifths of the votes actually cast will transfer the county seat to the place having such three-fifths vote. The county seat in Traill county before the election under this statute was located at Caledonia. The proceedings taken under the act were regular and the vote in favor of a relocation at Hillsboro was sufficient to work a relocation of the county seat at that place, if the law in question is valid.

It is undisputed that the proceedings were not efficacious to transfer the county seat, under § 565, Comp. Laws; the petition not being signed by two-thirds of the qualified voters, and the vote in favor of Hillsboro not being equal to two-thirds of the votes cast. The sole inquiry in this appeal, therefore, is respecting the constitutionality of chapter 56 of the Laws of 1890. It is challenged as unconstitutional because of its alleged conflict with § 69 of article 2 of the state constitution, which pro-

vides that "the legislative assembly shall not pass local or special laws in any of the following enumerated cases, that is to say: * * * (3) Locating or changing county seats." The provision of chapter 56 which it is claimed renders that act obnoxious to this constitutional inhibition is the proviso which reads as follows: "Provided, that nothing in this act shall permit the removal to or locating of the county seat of any county at a place not located upon a railroad, nor wherein the court house and jail now erected exceed in value the sum of $35,000." It is undisputed that some of the counties of the state fall within the proviso, and that some of them fall without it, and within the regulation of the act. It is therefore apparent that by this proviso the legislature has classified counties for the purpose of determining under what law a relocation of the county seat can be obtained. The proviso excepts from the provision of chapter 56, counties with respect to which the circumstances are peculiar. These counties are either left under the provisions of § 565 of the Compiled Laws, or there is no statutory rule regulating or permitting the relocation of county seats therein. Whichever of these two views we take, these counties are placed in a separate class by themselves; and the question which naturally suggests itself is whether this particular classification can be sustained under the authorities and the spirit of the constitutional prohibition against special legislation. This section of the constitution must have a reasonable construction. To say that no classification can be made under such an article would make it one of the most pernicious provisions ever embodied in the fundamental law of a state. It would paralyze the legislative will. It would beget a worse evil than unlimited special legislation—the grouping together without homogeneity of the most incongruous objects under the scope of an all embracing law. On the other hand the classification may not be arbitrary. The legislature cannot finally settle the boundaries to be drawn. Such a view of the organic law would bring upon this court the just reproach that it had suffered the legislature to disregard a a constitutional barrier by relegating to it the question where that barrier should be set up. See Pell v. Newark, 40 N. J. Law 71-80; Appeal of Ayars, 122 Pa. St. 266, 16 Atl. Rep. 356.

Where shall the line properly be traced? We believe that in testing this question these inquiries should be made: Would it be unjust to include the classes of objects or persons excluded? Would it be unnatural? Would such legislation be appropriate to them? Could it properly be made applicable? Is there any reasonable ground for excluding them? It is impossible, from the very nature of the case, to state with precision the true doctrine. But it is our opinion that every law is special which does not embrace every class of objects or persons within the reach of statutory law, with the single exception that the legislature may exclude from the provisions of a statute such classes of objects or persons as are not similarly situated with those included therein, in respect to the nature of the legislation. The classification must be natural, not artificial. It must stand upon some reason, having regard to the character of the legislation.

We find in the adjudications no more felicitous statement of the true doctrine than that of Chief Justice BEASLEY in State v. Hammer, 42 N. J. Law 439: "But the true principle requires something more than a mere designation by such characteristics as will serve to classify; for the characteristics which thus serve as a basis for classification must be of such a nature as to mark the object so designated as peculiarly requiring exclusive legislation. There must be a substantial distinction, having reference to the subject matter of the proposed legislation between the objects or places embraced in such legislation and the objects or places excluded. The marks of distinction on which the classification is founded must be such, in the nature of things, as will in some reasonable degree, at least, account for or justify the restriction of the legislation." The whole trend of the authorities is in this line. See Nichols v. Walter, 37 Minn. 264, 33 N. W. Rep. 800; Appeal of Ayars, 122 Pa. St. 216, 16 Atl. Rep. 356; People v. Railroad Co., 83 Cal. 393, 23 Pac. Rep. 303; In re Washington St., 132 Pa. St. 257, 19 Atl. Rep. 219; State v. Boyd, 19 Nev. 43, 5 Pac. Rep. 735; Closson v. Trenton, 48 N. J. Law 438, 5 Atl. Rep. 323; Bray v. Hudson Co., 50 N. J. Law 82, 11 Atl. Rep. 135; Township of Lodi v. State, 51 N. J. Law 402, 18 Atl. Rep. 749; Utsy v. Hiott, 30 S.

C. 360, 9 S. E. Rep. 338; State v. Somers' Point, 52 N. J. Law 32, 18 Atl. Rep. 695; Clark v. City of Cape May, 50 N. J. Law? 558, 14 Atl. Rep. 581; Trust Co. v. Whithed, 2 N. D.——, 49 N. W. Rep. 318. This list might be greatly enlarged. We are inclined to the view that under the authorities, had the legislature not closed the door against accessions to the class of counties having a court house and jail exceeding $35,000 in value, the classification would have been proper. But an arbitrary time is fixed, after which no county coming within the same conditions which characterize the class can gain admittance to such class. "Provided, that nothing in this act shall permit the removal to or relocation of the county seat of any county * * * wherein the court house and jail now erected exceed in value the sum of $35,000." This classification is not based upon natural reason, but upon the arbitrary fiat of the legislature. While it may be true that the county seat ought not to be so easily relocated in a county wherein the loss to the taxpayer will be greater by reason of the erection at the existing county seat of expensive buildings as in the county where such loss will be comparatively trifling in amount, it is not reasonable that the mere time when such expensive buildings are constructed should at all enter into the consideration of the matter. This law was approved March 7, 1890. So far as the value of improvements is concerned, it accepts only those counties wherein the court house and jail now erected exceed in value the sum of $35,000. If the word "now" refers to the date of approval of the act, all counties having a court house and jail exceeding $35,000 in value on the 8th of March of that year, but not on the 7th; or if the word "now" refers to the date when the act took effect, *i. e.*, July 1st, all counties in which the court house and jail worth more than $35,000 should be completely erected on July 2d instead of July 1st—would nevertheless be subject to the provisions of the new law, although the natural reason can suggest no justification of such a distinction. If the danger of serious loss to the taxpayer by the removal of a county seat from a place at which expensive buildings have been constructed affords reason for placing counties in which such a condition exists in a separate class, to

be governed by more stringent legislation in this respect, there is no reason why a county in which for the first time such a condition exists on a later day should be excluded from this separate class, any more than a county in which this condition existed the day before. There is no natural reason for a classification of counties in which the same conditions exist, based solely on and arbitrarily upon the period of time before or after which such conditions existed for the first time. Such a doctrine would lead inevitably to unlimited special legislation under the mere guise of classification. It would nulify the constitution so far as it prohibited special legislation. The authorities are unanimous on the point. In Com. v. Patton, 88 Pa. St. 258, the court say: "Said act makes no provision for the future, in which respect it differs from the act of 1874, which in express terms provides for the future cities and the expanding growth of those now in existence. That is not classification which merely designates one county in the commonwealth, and contains no provision by which any other county may, by reason of its increase of population in the future, come within the class." In State v. Donovan, 20 Nev. 75, 15 Pac. Rep. 783, the court say: "All acts or parts of acts, attempting to create a classification of counties or cities by a voting population, which are confined in their operation to the existing state of facts at the time of their passage, or to any fixed date prior thereto, or which by any devise or subterfuge exclude the other counties or cities from ever coming within their provisions, or based upon any classification which in relation to the subject embraced in the act is purely illusory, or founded upon unreasonable, odious, or absurd distinctions, have always been held unconstitutional and void."

Nichols v. Walter, 37 Minn. 264, 33 N. W. Rep. 800, is peculiarly in point. The court said: "Recurring to the law in question, we find it divides the counties in two classes, the classification based upon an event in the past so that no county in one class can ever pass into the other class; and to those in one class is applied what we may call the majority rule, and to those in the other the three-fifths rule. Had the act specified by name those counties in which one rule should apply, and

those in which the others should apply, it would hardly be questioned that the legislation was special, and not general and uniform in its operation throughout the state. But the counties were, at the date of the act, identified, and their *status* fixed for all time by reference to the specified event as fully as though the counties were named. There is nothing in the event which is the basis of classification which suggests any necessity or propriety for a different rule to be applied to the counties to be placed in the two classes. Why one county which had located its county seat by a vote of its electors, twenty-five years or six months before the act passed, should require a vote of three-fifths of its electors to remove it, and the county which should so locate it three or six months after the act passed may again remove or locate it upon a mere majority vote, is impossible to conceive, except that the legislature has arbitrarily so provided. But in such matters the legislature cannot arbitrarily so provide. The act is unconstitutional and void." In Marmet v. State, 45 Ohio St. 63, 12 N. E. Rep. 463, the same doctrine is clearly stated and recognized: "The law is not a special act. It is local and special as to the ends to be accomplished, but general in its terms and operations, applying to all cities of the first grade of the first class. It is not limited to such city as may have been in that class and grade at the date of its enactment. At that time Cincinnati was the only city in the state answering to the description, but there is a possibility, not to say certainty, that other cities in the state will increase in population so that they will pass into this grade, and when that happens they will come within the provisions of this law. In this respect the law differs essentially from that in review in the case of State v. Mitchell, 31 Ohio St. 592. That law was made applicable only to cities of the second class having a population of 31,000 at the last federal census, and inasmuch as Columbus was the only city in the state having that population, and as the act could apply only to that city and never to any other, and as it undertook to confer corporate powers, this court held it to be in conflict with § 1 of article 13, and therefore void. A like objection was found to exist against the act under consideration in the case of State v. Pugh, 43 Ohio St.

98, 1 N. E. Rep. 439, and the distinction above indicated is made apparent with great clearness and force in the opinion rendered by the present chief justice." Without further quotation from opinions, we cite, as sustaining the same view, the following cases: State v. Boyd, 19 Nev. 43, 5 Pac. Rep. 735; Morrison v. Bachert, 112 Pa. St. 322, 5 Atl. Rep. 739; Ohio v. Covington, 29 Ohio St. 102; Devine v. Commissioners, 84 Ill. 592; State v. Herman, 75 Mo. 340; State v. Mitchell, 31 Ohio St. 607; State v. Hunter, 38 Kan. 578, 17 Pac. Rep. 177; Zeigler v. Gaddis, 44 N. J. Law 365; State v. Hammer, 42 N. J. Law 440.

It was urged that the mere fact that those counties in which there were such expensive buildings could never come within the law was insufficient to render the act void; that they, under ordinary circumstances, would never descend into that class; and that the fact that destruction of such expensive improvements might possibly in the future bring them within the description of the class having inexpensive public buildings should not be considered, it being only a remote contingency. But the difficulty with this reasoning is that it ignores the fact that the counties having inexpensive buildings at the date of the passage of the act can never, by the erection of expensive buildings or in any other manner, ascend into the expensive building class. They are kept forever within the particular class in which the act finds them, notwithstanding the fact that in the future change of condition may bring them within the description of the other class. The boundary between these two classes was as permanently fixed when the act was passed as if the counties had by name been placed within these two classes respectively. The line drawn by the legislature is therefore purely arbitrary. It is one thing to assert that all except a single object will be forever kept from the class by circumstances, and another and entirely different thing to attempt to exclude all others by the very terms of the law. A law applicable to all the cities of the state of New York having not less than a million population may never embrace any other city. But, the classification being reasonable, it ought not to be prohibited because no other city may ever enter the class. But, when the act in express terms

prevents any further accession to the class, it is apparent that the classification stands, not upon a reasonable ground based on difference in population, but is purely arbitrary.    The act might as well have expressly named the particular objects included, to the exclusion of all others.    So far as this particular provision of the constitution against special legislation is concerned, it is immaterial that the act is general in form.    The question is always as to its effect.    Any other doctrine would render nugatory the prohibition of the fundamental law against special legislation.    Under the guise of statutes, general in terms, special legislation, in effect, could be adopted with no inconvenience, and the evil to be extirpated would flourish unchecked. Statutes general in terms have been adjudged void as special legislation because they could operate only upon a part of a class.    The authorities are explicit upon this question: People v. Railroad Co., 83 Cal. 393, 23 Pac. Rep. 303;  Investment Co. v. School Dist. 21 Fed. Rep. 151; Miller v. Kister, 68 Cal. 142, 8 Pac. Rep. 813; Nichols v. Walter, 37 Minn. 264, 33 N. W. Rep. 800;  Com. v. Patton. 88 Pa. St. 258:  Devine v. Commissioners, 84 Ill. 592;  State v. Michell, 31 Ohio St. 607.   Said the court in Nichols v. Walter: "These cases cited from many on the subject are sufficient to show that, in determining whether a law is general or special, courts will look not to its form or phraseology merely, but to its substance and necessary operation." In Com. v. Patton, 88 Pa. St. 258, an act general in form, but so worded that it could apply to only one county in the state, was before the court.    It characterized this attempted evasion as " classification run mad."    In State v. Pugh, 43 Ohio St., 98, 1 N. E. Rep. 439, the court say, at page 103, 43 Ohio St. and page 448, 1 N. E. Rep.:   "It is not the form the statute is made to assume, but its operation and effect which is to determine its constitutionality."    It is no answer to the contention that an act is special legislation, to insist that only a single class is excluded.    The exclusion of a single person or object which should be affected by a statute is fatal.    All must be included or the law is not general.    If one may be omitted, where shall this line be drawn?    Here authority is in accord with principle. Davis v. Clark, 106 Pa. St. 385;  Bray v. Hudson Co., 50 N. J.

Law 82, 11 Atl. Rep. 135; Bowyer v. Camden, 50 N. J. Law 87, 11 Atl. Rep, 137; Manning v. Klippel, 9 Or. 367; Miller v. Kister, 68 Cal. 142, 8 Pac. Rep. 813; Township of Lodi v. State, 51 N. J. Law 402, 18 Atl. Rep. 749. In this last case the court said: " The rule is that in any classification for the purpose of a general law all must be included and made subject to it, and none omitted that stand upon the same footing regarding the subject of legislation. To omit one so circumstanced is as fatal a defect as to include but one of a number. In Davis v. Clark, 106 Pa. St. 384, the court said: "It was not then a general act applicable to every part of the commonwealth. It did apply to a great number of counties, but there is no dividing line between a local and a general statute. It must be one or the other. If it apply to the whole state, it is general. If to a part only, it is local. As a legal principle, it is as effectually local when it applies to sixty-five counties out of the sixty-seven as if it applied to one county only. The exclusion of a single county from the operation of the act makes it local." To same effect is State v. Township of Mullica, 51 N. J. Law 412, 17 Atl. Rep. 941. The case of People v. Plank Road Co., 86 N. Y. 1, is cited as holding a contrary doctrine. We do not so construe that decision. But we would have no hesitation in declaring that doctrine unsound if it adjudged an act to be not special, so far as the constitutional inhibition against special legislation is concerned, because it related to all except two counties in the state where there was no reason for classification. If an act is not special because it relates to all except a single county in a state, without any reason for the classification, then the legislature can accomplish indirectly what it is beyond their power to bring about by direct steps. Whenever it is desired to introduce a new rule as to a single county, a general law can be passed establishing that rule in all the counties, and then another law can be enacted re-establishing the old rule in all counties except the one singled out to be governed by the new rule. The first law would be clearly general, and, under what it is claimed is the New York doctrine, the second act could not be assailed as special legislation. This would, indeed, be an ingenious mode of neutralizing the constitutional prohibition against special legis-

lation. We would not give it our sanction, however it might be buttressed by authority,

Can the proviso be stricken out and the act sustained without it? If, in striking out the proviso, the effect is to extend the provisions of the law over counties having expensive buildings, the legislative will is disregarded. If, on the other hand, it is said that the law will reach no further after the provision is eliminated than with the proviso undisturbed, then the act is special legislation, because it is too restricted in its operation. To include such counties is to defy the will of the legislature as expressed in their statute; to exclude them is to defy the will of the people as expressed in their fundamental law. Here again the voice of reason and the voice of authority are one. Nichols v. Walter, 37 Minn. 264, 33 N. W. Rep. 800; Railroad Co. v. Markley, 45 N. J. Eq. 139, 16 Atl. Rep. 436; State v. Sauk Co., 62 Wis. 376–379, 22 N. W. Rep. 572. Said the court in the last case: "It was argued by the counsel for the appellant that although the proviso in the act of 1881 is invalid it does not vitiate the whole act, and that the residue may be upheld as a valid law. The rule is in such cases that unless the void part was the compensation for or inducement to the valid portion, so that the whole act, taken together, warrants the belief that the legislature would not have enacted the valid portions alone, such portions will be operative; otherwise not.   *   *   * In the present case there is no room for the application of this rule, for the reason that the legislature has not enacted that the statute should extend to Grant county, but has expressed a contrary intention. By no possible construction can the statute be held to be operative in Grant county, and it is essential to its validity that it be operative in that as well as in every other county of the state."

It was urged in the appellants' brief that the act was repugnant to § 70 of article 2 of the state constitution, providing that " in all other cases where a general law can be made applicable, no special law shall be enacted." The point appears to have been abandoned on the oral argument, but we will notice it. There are two conclusive answers to this position. In the first place it applies only to cases other than those previously enumerated

in § 69, and this section embraces all laws locating or changing county seats.   The second answer is that the question whether a general law can be made applicable is purely a legislative question, and the decision of the law-making power in this respect is subject to no review.   Evansville v. State, 118 Ind. 426, 21 N. E. Rep. 267; Wiley v. Bluffton, 111 Ind. 152, 12 N. E. Rep. 165; Brown v. City of Denver, 7 Colo. 305, 3 Pac. Rep. 455; People v. McFadden, 81 Cal. 489, 22 Pac. Rep. 851; Richman v. Supervisors, 77 Iowa 513, 42 N. W. Rep. 422; Owners of Land v. People, 113 Ill. 296; State v. County Court, 50 Mo. 317; McGill v. State, 34 Ohio St. 247; State v. Hitchcock, 1 Kan. 178.

There is much force in the position that the act in question is a law of general nature, within the meaning of § 11 of article 1 of the constitution, providing that all laws of a general nature shall have a uniform operation.   Trust Co. v. Whithed, 2 N. D. 82, 49 N. W. Rep. 318; People v. Railroad Co., 43 Cal. 398-432.   But see State v. Shearer, 46 Ohio St. 275, 20 N. E. Rep. 335.   That the law is not uniform in its operation, within the meaning of the constitution, naturally follows from the arbitrary nature of the classification it attempts to make. See cases cited in Trust Co. v. Whithed, 2 N. D. 82, 49 N. W. Rep. 318-320. The judgment and order of the district court are reversed, and that court is directed to enter judgment in favor of the plaintiffs upon the demurrer for the relief demanded in the complaint.   All concur.