ROY BELEAL, BY E. J. BELEAL, HIS GUARDIAN AD LITEM, V. NORTHERN PACIFIC RAILWAY COMPANY.

Opinion filed May 31, 1904.

**Master and Servant — Common Law Liability — Injury to Servant.**

1. The evidence shows that there was no common-law liability on the part of the defendant for the plaintiff's injury.

**Same— Railroad Employes — Negligence of Co-Employes.**

2. Chapter 131, page 178, Laws 1903, making railroad companies liable to an employe for injuries caused by the negligence of a co-employe, applies only to those employes engaged in operating the

railroads, and so exposed to the peculiar damages attending that business.

**Same.**

3. The work in which the plaintiff and his fellow servant were engaged was not that kind of work to which the statute applies

Appeal from District Court, Barnes county; *Burke,* J.

Action by Roy Beleal, by E. J. Beleal, his guardian ad litem, against the Northern Pacific Railway Company. Judgment for plaintiff, and defendant appeals.

Reversed, and judgment ordered for defendant.

*Ball, Watson & Maclay,* for appellant.

It was unnecessary to warn plaintiff of dangers which were obvious and which he understood, and the rule applies to minors. Naylor v. C. & N. W. Ry. Co., 11 N. W. 24; Casey v. St. P., M. & O. Ry. Co., 62 N. W. 624; Berger v. St. M. & M. Ry. Co., 38 N. W. 814; Burkley v. Gutta Percha & Rubber Mfg. Co., 21 N. E. 717; Ogley v. Miles, 34 N. E. 1059; Hickey v. Taafe, 12 N. E. 286; Downey v. Sawyer, 32 N. E. 654; De Souza v. Stafford, Mills, 30 N. E. 81; Hightower v. Gray, 83 S. W. 254; Williamson v. Sheldon Marble Co., 29 Atl. 669; Tinkham v. Sawyer, 27 N. E. 6; Herold v. Pfister, 66 N. W. 355; Terry v. Schmidt, 115 Fed. 627; Cirach v. Woolen Co., 15 N. E. 579; Levy v. Bigelow, 34 N. E. 128.

A master need furnish only such appliances as are suitable to accomplish the work. Richards v. Rough, 18 N. W. 785; Sweeney v. Berlin & Jones Envelope Co., 358; Delaware River Works v. Nuttel, 13 Atl. 65; Naylor v. C. & N. W. Ry. Co., supra.

Chap. 131, Laws of 1903, is unconstitutional and void in toto or its purpose and scope must be referred to "railroad hazards" proper. Lavall v. St. P., M. & M. Ry. Co., 41 N. W. 974; Pearson v. C. M. & St. P. Ry. Co., 41 N. W. 34; Johnson v. St. P. & D. Ry. Co., 45 N. W. 156; Weisel v. Eastern Ry. of Minn., 82 N. W. 576; Herrick v. Same, 127 U. S. 210, 8 Sup. Ct. Rep. 1176.

In Minnesota cases holding railroad companies liable, the line of demarcation limiting liability to hazards peculiar to railroads is consistently maintained. Bloomquist v. Gt. N. Ry. Co., 67 N. W. 804; Leier v. Transfer Co., 65 N. W. 269; Nichols v. C. M. & St. P. Co., 62 N. W. 386; Steffenson v. C. M. & St. P. Co., 47 N. W. 1068; Smith v. St. P. & D. Co., 46 N. W. 149; Schus v.

Bowers-Simpson Co., 89 N. W. 68; Iowa sustains the same rule. Pierce v. Cent. Ia. Ry., 34 N. W. 783; Frandson v. Railway Co., 36 Iowa, 372; Deppe v. Ry. Co., 36 Iowa, 52; Nelson v. C. M. & St. P. Ry. Co., 35 N. W. 611; Rayburn v. Cent. Iowa Ry. Co., 35 N. W. 606; Schroeder v. Ry. Co., 47 Iowa, 375.

The statute of Iowa was adopted in Kansas, and the same construction given it there. Missouri, etc., Ry. Co. v. Haley, 25 Kan. 26.

*Lee Combs,* for respondent.

Where a master orders a servant into dangerous service, without proper warning or instructions, and sometimes where they are given, the employer would be answerable for the minor's injury. 4 Thompson on Neg., section 3818; McMillon Marble Co. v. Black, 14 S. W. 479; Turner v. Norfolk & W. Ry. Co., 22 S. E. 83; Wolski v. Knapp, Stout & Co., 63 N. W. 87; Palmer v. Mich. Cent. R. R. Co., 49 N. W. 613; Allen v. Jakel, 73 N. W. 555; Hoffman v. Adams, 64 N. W. 7; Kailar v. N. W. Bedding Co., 48 N. W. 779.

Whether the minor warned was negligent, or whether there was negligence of the master in failing to warn and instruct, are questions for the jury. Chopin v. Badger Paper Co., 53 N. W. 452; N. Y. Biscuit Co. v. Rouss, 74 Fed. 608; Chicago Am. Pressed Brick Co. v. Reinnieger, 29 N. E. 1106, 33 Am. St. Rep. 249; Hanson v. Ludlaw Mfg. Co., 38 N. E. 363.

The master must provide and maintain reasonably safe places and instrumentalities in which and with which to work. Mayer v. Leibman, 44 N. Y. Sup. 1064; Shoemaker v. Bryant Lbr. Co., 68 Pac. 380; Meyer v. Morgan, 52 N. W. 174; Thomas v. Ross, 75 Fed. 552; Peerpont Fireproof Const. Co. v. Hansen, 69 Ill. App. 659; Knickerbocker Ice Co. v. Bernardt, 95 Ill. App. 23.

Chap. 131, Laws of 1903, is constitutional. Ga. etc., Co. v. Goldwire, 56 Ga. 196; Marsh v. S. Car. R. Co., 56 Ga. 274; So. R. Co. v. Johnson, 114 Ga. 329; Ga. R., etc., v. Hicks, 22 S. E. 613.

Limiting the operation of the law to railroad business proper, it is constitutional. Mo. Pac. R. Co. v. Mackey, 127 U. S. 205, 8 Sup. Ct. Rep. 1161, 32 L. Ed. 107; Minn. & St. L. Ry. Co. v. Herrick, 127 U. S. 109, 8 Sup. Ct. Rep. 1176; Ch., M. & St. P. Ry. Co. v. Artery, 137 U. S. 515, 11 Sup. Ct. 129; Chicago, Kan. & W. Ry. Co. v. Pontius, 157 U. S. 209, 15 Sup. Ct. 185.

Persons assisting in loading and unloading railroad material, fixing a dead engine are within the rule as to liability for neglect of co-employes. A. T. & S. F. Ry. Co. v. Koehler, 15 Pac. 567; A. T. & S. F. Ry. Co. v. Brassfield, 32 Pac. 814; Ch., R. I. & P. R. Co. v. Stahley, 62 Fed. 363; 11 C. C. A. 88; Butler v. Ch., B. & Q. R. Co., 54 N. W. 208; Mikkelson v. Truesdale, 65 N. W. 260.

ENGERUD, J. This is an action brought by a minor, who is represented by a guardian ad litem, to recover damages for an injury suffered while in the employ of the defendant railroad company, for which injury he claims the company is liable. He alleges that the injury was caused by negligence for which the company is liable on common-law principles, and also claims that the defendant is liable under chapter 131, p. 178, Laws 1903, because the injury was caused by the negligence of a fellow servant. The trial court denied defendant's motion for a directed verdict, and submitted the question of liability to the jury. There was a verdict for plaintiff, and judgment accordingly. The court denied defendant's alternative motion for judgment notwithstanding the verdict, or for a new trial. The defendant appealed from that order.

The appellant assigns as error the denial of said several motions, and the assignments also question the propriety of the instructions to the jury. There is no dispute as to the facts. The plaintiff, at the time of the injury, December 31, 1903, was 16 years of age and lived with his parents at Valley City, where the accident occurred. He was large and strong for a boy of his age, and intelligent. Some time before the accident, the company had a force of men, in charge of a foreman, at work cutting and removing ice from the Sheyenne river at Valley City, and loading it into cars for the use of the company. The plaintiff was engaged to assist in this labor and had been at work three days before the accident. The blocks of ice were taken from the river to a platform or staging on the bank about 8 feet high. The platform was about 20 feet from the track. The ice was conveyed from this platform to the cars by sliding it down one or the other of three open chutes extending from the platform to the track. A car was placed at the lower end of each chute, so that three cars could be loaded at the same time. Guard rails were fastened on the edges of each chute so as to prevent the blocks of ice from falling off on the sides. The lower end of the chutes did not extend to the edge of the car that was being loaded. The blocks of ice were often broken and crushed in the chute, and it was necessary to have a means

of disposing of the crushed and broken pieces of ice which were constantly accumulating at the bottom of the chute. In order to do this the chutes were so constructed as to leave a space about two feet wide between the lower end of the chute and the edge of the car. When the car was in position, beams were laid across so as to bridge this space. These beams had to be removed and replaced every time a loaded car was to be taken away and an empty one put in position for loading. The broken and crushed ice was pushed or shoveled off the sides of this temporary platform, and a man had to be kept at work on the ground beneath to prevent its accumulation in sufficient quantities to block the track. The plaintiff was so engaged when he was injured by a large block of ice falling upon him, badly crushing and lacerating the muscles of his left leg. The block of ice had been broken in the chute and was unfit to be loaded. One of the workmen above had therefore pushed it off the said temporary platform without warning the plaintiff, who was at work below. Plaintiff asserts that it was an act of negligence, for which the defendant is liable, that no guard rail was constructed so as to prevent the broken ice from being pushed off the platform. This contention is manifestly untenable. Such a guard rail would have defeated the purpose for which the temporary platform was constructed. Moreover, the danger to one underneath would have been just as great whether the ice was pushed off or lifted or thrown off, provided, in either case, there was no warning.

The contention that the defendant is liable because the foreman put this boy to work in this hazardous position, without warning him of the danger, is equally untenable. A boy 16 years of age of ordinary intelligence could not possibly fail to know and appreciate the danger of working underneath the edge of the platform. Any amount of explanation of these dangers would convey no more information than his eyes disclosed. The injury was not the result of any lack of knowledge of the risk, but was wholly due to the negligence of the man above, who pushed the heavy piece of ice off without warning to the boy below.

There was no evidence whatsoever of any negligence imputable to the defendant as a master, on common-law principles. The defendant is liable only, if at all, by reason of the provisions of chapter 131, p. 178, Laws 1903: "Every railroad company organized or doing business in this state shall be liable for all damages done

to any employe of such company in consequence of any negligence of its agents, or by any mismanagement of its engineers, or other employes, to any person sustaining such damage; and no contract which restricts such liability shall be legal or binding." With the exception of the last clause, this statute is a verbatim copy of the Kansas law on the same subject. Comp. Laws Kan. 1879, c. 84, section 20. Though differing slightly in phraseology, it is, in substance, identical with the statute which was in force in Iowa from 1862 to 1872 (section 7, c. 169, p. 198, Laws Iowa 1862), and with the statute enacted in Minnesota in 1887, which is still in force in that state (chapter 13, p. 69, Laws Minn., 1887). It is quite clear, from the title of the act, as well as from the fact that it was evidently borrowed from a sister state where it had been construed, that the word "agent" was not used in a strict sense, but was intended to include employes within its meaning. Giving the word "agent" that meaning, it is clear that the act, if applied literally, is broad enough to impose upon the defendant road company liability for the negligence of the plaintiff's fellow servant. The appellant contends, however, that the language of the act cannot be taken literally. Counsel insists that the act imposes this extraordinary liability upon a railroad corporation only in those cases where an employe is injured by the negilgence of a fellow servant while engaged in some railroad employment which exposes the employes to those hazards which are peculiar to the use and operation of railroads. We agree with counsel's contention. The fact that the statute was evidently borrowed from a sister state, where it had received a settled construction more than 20 years before it was adopted here, is very persuasive evidence that the legislature intended to adopt the construction which the parent statute had received. This law was construed in Kansas in 1881, in the case of Missouri Pac. Ry. Co. 1. Haley, 25 Kan. 35. That court said that the act was borrowed from the Iowa act of 1862, and that, following the construction placed upon it in Iowa, it should be construed to embrace only those persons more or less exposed to the hazardous business of railroading. That construction has been adhered to ever since in that state. The Iowa act of 1862, from which the Kansas act was derived, was construed by the Iowa Supreme Court in 1872, in Deppe v. Railway Co., 36 Iowa, 52. It was held in that case that, if the act were construed literally "so as to apply to all persons in the employ of railroad

corporations, without regard to the business they were employed in, then it would be a clear case of class legislation, and would not apply upon the same terms to all in the same situation." It was accordingly held that the act only applied to employes engaged in a service exposed to the perils incident to the use and operation of railroads. This law was amended in 1873 so as to expressly limit the operation of the act to injuries suffered while engaged in the use and operation of the railroad. Bucklew v. Railway Co. (Iowa), 21 N. W. 103. The Minnesota statute on the subject was adopted in 1887 (chapter 13, page 69, Laws Minn. 1887), and is, in substance, the same as our law, differing only slightly in phraseology. The question as to its construction and constitutionality was squarely presented to the Supreme Court of that state in Lavallee v. Railroad Co., 40 Minn. 249, 41 N. W. 974, decided in 1889. The court held that the act applied "only to those employes engaged in operating the railroads, and so exposed to the peculiar dangers attending that business." That decision has been adhered to ever since in that state through a long line of decisions. There is a strong presumption that our legislature, in adopting the law, knew the construction such a law had received in the state or states from which our law was apparently borrowed, and that presumption affords strong evidence that the legislature intended that it should receive the same construction here. We should, however, hesitate to go outside the language of the act, where its language is unambiguous, for evidence of legislative intent, were we not convinced that to give effect to the act literally would convict the legislature of transgressing the constitutional inhibitions against class legislation.

The state constitution (section 11) declares that "all laws of a general nature shall have a uniform operation." A similar prohibition against class legislation is contained in the last clause of section 20: "Nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens." The object and meaning of these constitutional provisions has been passed upon so often and is so well understood that a discussion of that subject is unnecessary. Corporations are protected by them as well as natural persons. Gulf, etc., Ry. Co. v. Ellis, 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666. The prohibition against what is popularly styled "class legislation," does not prohibit proper classification or discrimination for

the purpose of legislation. It is not necessary that a law shall operate upon all alike, but, as indicated by the clause quoted from, it must operate alike upon all who are in like situation. The law need not have a universal operation, but it must be uniform. Proper classification is permitted, but arbitrary and unreasonable discrimination is forbidden. Vermont Loan & Trust Co. v. Whithed, 2 N. D. 82, 49 N. W. 318; Edmonds v. Herbrandson, 2 N. D. 270, 50 N. W. 970, 14 L. R. A. 725; Angell v. Cass Co., 11 N. D. 265, 91 N. W. 72. As said by Mr. Justice Brewer, in Gulf, etc., Ry. Co. v. Ellis, 165 U. S. 155, 17 Sup. Ct. 257, 41 L. Ed. 666, in discussing the propriety of discrimination in legislation: "That [classification for legislation] must rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis."

There can be no doubt that the business of running trains, keeping the tracks in repair, and other similar work connected with the use and operation of railroads—that class of work which may be called railroad work proper—is of a peculiarly hazardous nature, and for that reason may be properly placed in a class by itself to that extent, for the purpose of imposing on the master a greater liability to the employes so engaged and giving the latter greater rights against the master in case of injury, than in other occupations. Such laws have been uniformly sustained. Railway Co. v. Mackey, 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107; Railway Co. v. Montgomery (Ind. Sup.) 49 N. E. 582, 69 L. R. A. 875, 71 Am. St. Rep. 301; Callahan v. Railway Co., 170 Mo. 473, 71 S. W. 208, 60 L. R. A. 249, 94 Am. St. Rep. 746, and cases cited. Such a classification is proper because the peculiar nature of the work furnishes a proper basis therefor. The statute in question, however, taken literally, as respondent would have us do, purports to put railroad corporations in a class by themselves, simply because they are such corporations, and imposes upon them a liability from which other corporations under like circumstances are exempt, and extends to employes of a railroad, regardless of the nature of their work, certain rights which other laborers engaged in the same kind of work do not enjoy. Take this case as an illustration: There are many other companies besides railroad companies which lay up ice in large quantities for use in their business. If an ice company or a meat packing concern had had

this force of men at work at the same time and place and with the same apparatus, and the injury had been inflicted under the same circumstances, the master would not have been liable for the negilgence of plaintiff's fellow servant. The liability of the ice company or the packing house as a master would be less than that of the railroad company, and the employe of the latter would have more means of redress for his injury than the employe of some other kind of corporation. There is absolutely no difference in the nature of the work, or in the relative situation or condition of the master and employe, between a railroad company and any other company gathering ice for its use. As said by Chief Justice Gilfillan, in Lavallee v. Railroad Co., supra: "But no just reason can be suggested why such difference should be founded, not on the character of the employment, nor of the dangers to which those employed are exposed, but on the character only of the employer." We may add that there is no just reason for such an arbitrary discrimination in favor of the employes of the one class of corporations and against those of another. In Georgia and Wisconsin, it was held that such a discrimination was valid. Ga. Ry. Co. v. Ivey, 73 Ga. 504; Ditberner v. Railway Co., 47 Wis. 138, 2 N. W. 69. In our opinion those decisions wholly fail to answer the objection to such discrimination on the ground of class legislation. The Wisconsin case involved an injury suffered in railroad work proper, and the broad ground taken in that case was unnecessary. It is noticeable, too, that the law involved in that case was repealed in 1880, and the new law on the subject limits the liability of the company so as to make it answerable only for the acts of that class of employes who are engaged in railroad work proper. Sanborn & B. Ann. St. Wis. section 1816a. So far as we have discovered, that limitation is recognized in every state where such laws are in force (with the exception of Georgia), either by the express language of the act or by judicial construction. It is apparent that cases may often arise in which it is a matter of some difficulty to determine whether or not the injury was suffered while engaged in that class of railroad work to which the act applies. This case, however, presents no difficulty in that respect. The fact that the ice was being gathered for the use of the railroad company does not make the work any more hazardous than it would be if some other corporation were the master. It clearly had no connection with the class of railroad work to which the act applies.

For these reasons, we hold that the undisputed evidence conclusively shows that the defendant is not liable for the injury complained of.·

The order appealed from is reversed, and the district court will be directed to order judgment for defendant, notwithstanding the verdict. All concur.