STATE of North Dakota ex rel. Ervin KJEL-DEN, Alfred Nelson and Harold Kindervog, as electors, taxpayers and members of the School Board of South Minnewaukan No. 30 School District of Ramsey County, North Dakota, and Eddie Kleven, Alvin Anderson and Willard Elverum, as electors, taxpayers and members of the School Board of Minnewaukan No. 4 School District of Ramsey County, North Dakota, Plaintiffs and Relators,

v.

Caroline HORNE, as County Superintendent of Schools of Ramsey County, North Dakota, Defendant and Respondent.

No. 7847.

Supreme Court of North Dakota.

Aug. 18, 1959.

Duffy & Haugland, Devils Lake, for relators.

Traynor & Traynor, Devils Lake, and Leslie R. Burgum, Atty. Gen., Helgi Johanneson, Asst. Atty. Gen., Gerald W. Vande Walle, Sp. Asst. Atty. Gen., for respondent.

Shaft, Benson & Shaft, Grand Forks, Kelsch & Scanlon, Mandan, amici curiae.

MORRIS, Judge.

This matter presents a question of law certified to this court under the provisions of Chapter 32–24, NDRC 1943. Pursuant to an application of the relators the district court of Ramsey County issued a writ of certiorari to the respondent, the county superintendent of schools of Ramsey County, directing her to certify to that court a transcript of all proceedings concerning the organization of a new school district embracing portions of old school districts of which the relators were officers and to desist from further proceedings in connection therewith until the further order of the court. When the matter came on for hearing pursuant to the writ the parties stipulated the facts which we set forth in substance.

The county committee for the reorganization of school districts in Ramsey County, purporting to act under the provisions of Chapter 15–53, 1957 Supplement to NDRC 1943, formulated a plan for the organization of a new school district embracing two districts and parts of six others including parts of South Minnewaukan No. 30 and Minnewaukan No. 4, all in Ramsey County. The plan of reorganization was approved by the state committee and an election was called by the respondent county superintendent of schools to be held at Crary, North Dakota, on June 26, 1959, for the purpose of voting on the reorganization plan.

The relators Kjelden, Nelson and Kindervog are electors, taxpayers and members of the school board of South Minnewaukan District No. 30. The relators Kleven, Anderson and Elverum are electors, taxpayers and members of the school board of Minnewaukan District No. 4. None of the relators are electors residing in those portions of their respective school districts that are included in the proposed new district.

The election was held pursuant to a call issued by the respondent and upon her instructions the election officials restricted the right to vote to voters residing within the territory actually included in the proposed new district and rejected the votes of anyone living outside of the proposed district. 35 qualified voters residing in Minnewaukan and South Minnewaukan school districts outside of the area included in the proposed new district presented themselves to vote at the election. They were not permitted to vote.

The vote cast in the area classified as rural pursuant to the provisions of Section 15–5314, 1957 Supplement to NDRC 1943, was 76 in favor of reorganization and 45 against. All of the 35 votes that were rejected would have been cast against reorganization and if they had been cast and counted the reorganization plan would have failed of passage. The respondent recognized the election as valid and declared that the district was organized and called an election to choose a board of education for the new district. That election has presumably not been held because of the writ of certiorari and the stay of further proceedings contained therein which was issued on July 7, 1959.

When the hearing was had both the trial court and counsel deemed the sole and controlling question to be one of statutory construction. Upon application of the attorneys for the parties the trial court, acting pursuant to the provisions of Chapter 32–24, NDRC 1943, certified to this court the following question:

"Under the provisions of the school reorganization law, may all the voters residing within an existing school district vote upon the reorganization plan when only a portion of such district

is included in the proposed new district?"

The court further certified his answer to the question which was in the negative.

The answer to the certified question depends upon the construction to be given to certain language contained in Section 15-5314, 1957 Supplement to NDRC 1943 (Section 1, Chapter 145, Session Laws N.D. 1957). The pertinent portions of this section provide that upon receipt from the state committee of an approved plan for reorganization and terms of adjustment of property, debts and liabilities of the districts involved:

"the county superintendent shall call a special election of the voters residing within the territory of each district, such election to be held at the place or places therein which have been determined by the county superintendent to be convenient for the voters. In holding such election all existing districts within the proposed new district containing one or more incorporated villages or cities regardless of number or size shall vote as a single unit; and, all existing districts within such proposed new district regardless of number or size which do not contain one or more incorporated cities or villages shall vote as a single unit. For the purposes of this Act, all districts containing incorporated cities or villages shall be considered an incorporated area, and all districts which do not contain at least one incorporated city or village shall be considered a rural area."

This section also provides for determining the result of the election as follows:

"If a majority of all votes cast by the electors residing within the rural area of a proposed new district and the majority of all votes cast by the electors within the incorporated area of a proposed new district are both in favor of the formation of the district, the county superintendent"

shall proceed to carry out the organization of the district in the manner provided by law.

The relators point to the language heretofore quoted to the effect that in holding the election all existing districts within the proposed district containing incorporated villages or cities shall vote as a single unit and all existing districts within the proposed district not containing an incorporated city or village shall vote as another unit as sustaining their argument that all electors of an existing district whether they reside within or without the proposed district are entitled to vote. This language if considered alone would seem to give rise to an ambiguity for an existing district which is only partially within the new district would not ordinarily be considered to be "within" the district. Neither would it be without the district. The language in question must, however, be read in context and, if possible, harmonized with other provisions of the section. This seeming ambiguity disappears when we consider the provision for determining the result of the election which we have also quoted. It requires both a majority of all votes cast by the electors residing within the rural area of the proposed new district and a majority of all the votes cast within the incorporated area of the proposed new district to be in favor of formation of the proposed district in order to authorize the county superintendent to carry out the organization. This language clearly indicates that effective votes can be cast only by electors who reside within the boundaries of the proposed district. The relators seek to avoid its impact by arguing that the term "area" includes an entire district whether it lies wholly within or partly without the proposed new district. We are unimpressed by that argument. The areas referred to are those lying wholly within the new district and may not embrace part of an existing

district not included within the boundaries of the district proposed to be organized.

It is pointed out by amicus curiae that the first school district reorganization law, Chapter 147, Session Laws N.D.1947, which was repealed in 1953, directed the county superintendent to "call a special election of the voters residing within the territory of each new district," while in a similar direction in the 1953 act and the 1957 amendment thereto the word "new" was omitted. It is argued that this omission indicates an intention on the part of the legislature to confer the right to vote upon all electors of a district part of which was included within the boundaries of the proposed district. This argument loses its force in the face of the provision for determining the result of the election heretofore quoted which clearly limits the electors to those residing in the "proposed new district". The identical qualification is required of electors by the 1947 act.

The relators seek to support their contentions by resort to the history of school district reorganization statutes. The first enactment was Chapter 147, Session Laws N.D.1947, which became Chapter 15–53 of the 1949 Supplement to NDRC 1943. It was amended by Chapter 146, Session Laws N.D.1951. It is not contended that under this law electors residing outside of the territory embraced within the proposed new district could vote on the formation of the proposed district. By Chapter 142, Session Laws N.D.1953, the legislature repealed the existing law and enacted an entirely new statute providing for the reorganization of school districts which became Chapter 15–53 of the 1953 Supplement to NDRC 1943. It is contended that under the 1953 act all of the electors of an existing district which was only partially included within the new district could vote except where the electors had agreed to divide the district because of natural barriers or other reasons. The argument is based on this provision contained in Section 15–5314 of the 1953 Supplement:

"In holding such election each existing district shall vote as a unit except in districts in which the electors agree that the district shall be divided for purposes of this Act because of natural barriers or other reasons."

We here note that this provision was entirely omitted when the section was amended and reenacted in 1957 but regardless of the effect of this omission we do not believe that the omitted language sustains the relators' interpretation of the 1953 act. That act provides for a determination of the results of the election in language that clearly indicates that only electors residing within the proposed new district could vote as follows:

"If a majority of all votes cast by the electors residing within each of the existing districts or parts of existing districts of a proposed new district are in favor of the formation of the district, the county superintendent shall make the proper adjustment of the property, assets, debts, and liabilities as provided in such approved plan and shall organize and establish such districts * * *".

We would further point out that Section 2 of Chapter 145, Session Laws N.D.1957, which is now Section 15–5316, 1957 Supplement to NDRC 1943, provides that where the formation of a proposed district has been rejected by the voters at the election provided for in Section 15–5314, 1957 Supplement to NDRC 1943, the boundaries of the proposed district and the terms of adjustment of property, debts and liabilities may be revised and submitted at "a special election of the voters residing within the revised boundaries of the proposed new district." It is clear that under this section voters residing without the boundaries of the proposed new district may not vote. We will not attribute to the legislature an intention to create the absurdity of permitting electors outside of the proposed new district to vote on the

original proposal and excluding them from voting on the formation of the new district when its boundaries have been revised. We therefore hold that under the provisions of Section 15–5314, 1957 Supplement to NDRC 1943, only those voters residing within boundaries of the proposed new district may vote upon the formation of a new district.

It also appears that the Department of Public Instruction in its supervision of the reorganization of school districts placed upon this law an interpretation that is in accord with our construction of the statute. Of further significance is the fact that Section 15–5314 of the 1957 Supplement to NDRC 1943 was amended by Chapter 178, Session Laws N.D.1959, so as to alter the manner of giving notice of election but the language pertaining to the qualifications of electors to vote at such election was reenacted without change. The legislature is presumed to know the construction placed upon statutes by the executive departments of the state. State v. Equitable Life Assurance Society, 68 N.D. 641, 282 N.W. 411.

The brief by one amicus curiae cites the rule that:

"Where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, it is the duty of courts to adopt the latter construction." State v. Burleigh County, 55 N.D. 1, 212 N.W. 217.

It is then argued that the statute under consideration if given the effect of limiting the electors permitted to vote to those residing within the portions of districts included within the boundaries of the proposed district would be violative of Sections 11 and 20 of the North Dakota Constitution.

In State ex rel. Dorval v. Hamilton, 20 N.D. 592, 129 N.W. 916, 918, this court said:

"It is doubtless true that, notwithstanding constitutional inhibitions such as those contained in sections 11 and 20, the Legislature may provide a certain classification of citizens to be differently affected by the same general rule. The limitation imposed upon legislation of this character is, however, that any classification provided as the basis for distinctive or special operation of the law must be natural, not artificial. 'It must stand on some reason having regard to the character of the legislation.' Edmonds v. Herbrandson, 2 N.D. 270, 50 N.W. 970, 14 L.R.A. 725. 'It must rest on some difference which has a reasonable and just relation to the act in respect to which the classification is proposed.' 'It is not necessary that a law shall operate upon all alike, but * * it must operate alike upon all who are in like situation. The law need not have a universal operation, but it must be uniform. Proper classification is permitted, but arbitrary and unreasonable discrimination is forbidden.' Beleal v. Northern Pac. R. Co., 15 N.D. 318, 108 N.W. 33, 11 Ann.Cas. 921."

In McDonald v. Hanson, 37 N.D. 324, 164 N.W. 8, 11, a statute, Chapter 135, Session Laws N.D.1915, which provided two methods of organizing new common school districts, was challenged as being violative of Section 11 of the state constitution. The court said that:

"By the first method the petition must be signed by a majority of the school voters residing in the districts whose boundaries will be affected by the organization of the new district, and by at least three-fourths of the residents of the territory to be included in the new district. * * * Under the second method or provision of this law, the necessity for the signatures of any petitioners is eliminated except in the territory which is to form the new district, where three-fourths of the school voters are required to sign in

order to confer jurisdiction upon the board of county commissioners and superintendent of schools acting as such board to organize such new school district."

The court decided:

"said law is a general law, operating in every part of the state uniformly, when applied to like conditions and circumstances, and is in no sense special legislation."

We find in 16A C.J.S. Constitutional Law § 494 that:

"Legislation applicable only to certain areas of the state may be valid provided it applies to all persons similarly situated in such areas and to all parts of the state where like conditions exist."

See also 12 Am.Jur., Constitutional Law, Sec. 488; Union Free High School Dist. of Village of Montfort v. Union Free High School Dist. of Village of Cobb, 216 Wis. 102, 256 N.W. 788; Edmondson v. Bd. of Education of City of Memphis, 108 Tenn. 557, 69 S.W. 274, 58 L.R.A. 170; People v. Deatherage, 401 Ill. 25, 81 N.E. 2d 581.

■ Our conclusion is that the statute in question is not violative of either Section 11 or Section 20 of the state constitution and neither does it contravene Section 121 nor Section 122 which pertain to the elective franchise.

In Anderson v. Peterson, N.D., 54 N.W. 2d 542, 551, in considering the constitutionality of the 1947 school district reorganization act under which votes could only be cast by electors residing within the proposed district we said it:

"does not in any way provide for the taking of property without due process of law."

We answer the certified question in the negative and affirm the determination of the district court.

SATHRE, C. J., and BURKE, TEIGEN and STRUTZ, JJ., concur.