ALLEN VANEVERY, Respondent, v. MINNEAPOLIS, ST. PAUL, & SAULT STE. MARIE RAILWAY COMPANY, a Corporation, Appellant.

(171 N. W. 610.)

**Master and servant — negligence — injury of servant.**

In January, 1916, at Minot, the plaintiff was in the employ of defendant. His business was on the evening of each day to fill with coal the tender of a switching engine, by shoveling the same from a coal dock adjacent to the tender. By attempting to step from the tender onto the edge of a plank,— the near side of the coaling dock,—and to walk the edge of the plank, the plaintiff lost his footing and fell some 3 feet between the coal dock and the tender, and was badly hurt. The plaintiff's injury was not caused by the negli-

NOTE.—For a discussion of the question as to when employees are engaged in interstate commerce within the meaning of Employers' Liability Acts, see subdivision VII. of comprehensive notes in 47 L.R.A.(N.S.) 52, and L.R.A.1915C, 56, on application and effect of the Federal Employers' Liability Acts generally.

gence of defendant or of any of its employees, or by reason of any defect or insufficiency in its cars, engines, or appliances. Hence the plaintiff has no cause of action.

Opinion filed November 26, 1918. Petition for rehearing February 27, 1919.

Appeal from the District Court of Ward County, Honorable *K. E. Leighton,* Judge.

Judgment for plaintiff. Defendant appeals.

Reversed and dismissed.

*John E. Greene* and *John L. Erdall* (*Alfred H. Bright,* of counsel), for appellant.

It is not clear from the decisions of the Federal Supreme Court just what work is so connected with interstate commerce as to give an employee the benefit of the Federal Employers' Liability Act. 35 U. S. Stat. at L. 65 et seq.; Comp. Stat. §§ 8657 et seq.; N. Y. Cent. R. Co. v. Carr, 238 U. S. 260; C. B. & Q. R. Co. v. Harrington, 241 U. S. 177, 60 L. ed. 942; Shanks v. Del. L. & W. R. Co. 239 U. S. 556, 60 L. ed. 436; Illinois C. R. Co. v. Behrens, 233 U. S. 473, 58 L. ed. 1051; Erie R. Co. v. Welsh, 242 U. S. 303, 61 L. ed. 319; M. & St. L. R. Co. v. Winters, 242 U. S. 353, 61 L. ed. 358; Lehigh V. R. Co. v. Barlow, 244 U. S. 183, 61 L. ed. 1070.

The railroad is not required to exercise toward its employees that high degree of care required of a carrier of passengers with respect to the safety of its passengers. 4 Thomp. Neg. §§ 3773, 3767; Armour & Co. v. Russell, 6 L.R.A.(N.S.) 603, 604, and see extended notes pp. 602–609 (C. C. A.) 144 Fed. 614.

The master is not required to furnish a place to work that is absolutely safe, or the safest possible place, but only one that is reasonably safe. Streeter v. West Wheeled Scraper Co. 250 Ill. 244, Ann. Cas. 1913, chap. 204; 4 Thomp. Neg. § 2773; Jungnitz v. Mich. &c. Iron Co. 105 Mich. 270, 63 N. W. 296; Stiller v. Bohn Mfg. Co. 80 Minn. 1, 82 N. W. 982; Wood, Mast. & S. § 331; Bailey, Mast. & S. § 57; 26 Cyc. 1106, 1107.

For plaintiff to show that he has been injured under circumstances which may lead to a suspicion or fair inference of negligence on the part of defendant is not sufficient, he must go on and give evidence of some specific act of negligence on the part of the defendant. Longe-

grove v. London &c. R. Co. 16 C. B. N. S. 692; 4 Thomp. Neg. § 3865; Lane v. R. Co. 64 Kan. 755, 78 Pac. 626; Reed v. Boston R. Co. 164 Mass. 129, 41 N. E. 64.

One who knowing and appreciating a danger voluntarily assumes the risk of it cannot complain against another who is primarily responsible for the existence of the danger.    O'Malley v. Boston Gaslight Co. 47 L.R.A. 161; Streeter v. Western Wheeled Scraper Co. 250 Ill. 244, Ann. Cas. 1913C, 204; American Bridge Co. v. Valente, Delaware, 73 Atl. 400.

A verdict of $10,000 in this action is unwarranted by the evidence. Clark v. Brooklyn Heights R. Co. 78 N. Y. App. Div. 478, 76 N. Y. Supp. 811; Waterman v. M. St. P. & S. Ste. M. R. Co. 26 N. D. 548.

*E. R. Sinkler* and *Greenleaf, Wooledge, & Lesk,* for respondent.

It is immaterial whether plaintiff was engaged in intrastate or interstate commerce.    Fed. Employers Liability Act, § 3; N. D. Employers Liability Act, § 2; Kansas City W. R. Co. v. McAdow, 240 U. S. 51, 60 L. ed. 520; Chicago & N. W. R. Co. v. Gray, 237 U. S. 399, 59 L. ed. 1018, 9 N. C. C. A. 452; Eley v. C. G. W. R. Co. 166 N. W. 740; Wabash R. Co. v. Hayes, 234 U. S. 86, 6 N. C. C. A. 224; Troxell v. Delaware R. Co. 185 Fed. 540; Galveston R. Co. v. Averill (Tex.) 136 S. W. 98.

Plaintiff's work was interstate commerce.    N. Y. C. R. Co. v. Winfield, 244 U. S. 147, 61 L. ed. 1045, 14 N. C. C. A. 680; So. R. Co. v. Puckett, 244 U. S. 571, 61 L. ed. 1321; Kamboris v. Oregon, W. R. & Nav. Co. 146 Pac. 1097; C. R. I. & P. R. Co. v. Bond (Okla.) 148 Pac. 103; So. R. Co. v. Peters (Ala.) 69 So. 611; So. Pac. Co. v. Pillsbury (Cal.) 151 Pac. 277; Grybowske v. Erie R. Co. (N. J.) 95 Atl. 764; So. Pac. Co. v. Industrial Acci. Commission, L.R.A.1917E, 262, 161 Pac. 1139; Sears v. Atlantic C. L. R. Co. (N. C.) 86 S. E. 176; Mattocks v. C. & A. R. 187 Ill. App. 529; Tralich v. C. M. & St. P. R. 217 Fed. 675; Lombard v. Boston & M. R. Co. 223 Fed. 427; Ross v. Sheldon (Iowa) 154 N. W. 499; C. C. & St. L. R. Co. v. Farmers Trust Co. 108 N. E. 108.

Negligence and assumption of risk are for the jury.    O'Driscoll v. Faxon, 156 Mass. 527, 31 N. E. 685; Blondin v. Oolite Quarry Co. (Ind.) 37 N. E. 812, affirmed on rehearing 39 N. E. 200; Wood v.

Victor Mfg. Co. 66 S. C. 482, 45 S. E. 81, 14 Am. Neg. Rep. 629; Wyldes v. Patterson, 24 N. D. 218, 139 N. W. 577; Messenger v. Valley City St. R. Co. 21 N. D. 82, 32 L.R.A.(N.S.) 881, 128 N. W. 1023; Davy v. G. N. R. Co. 21 N. D. 43, 128 N. W. 311; Umstad v. Colgate Farmers Elevator Co. 18 N. D. 309, 122 N. W. 390; Cameron v. G. N. R. Co. 8 N. D. 124, 77 N. W. 1016; Stone v. N. P. R. Co. 29 N. D. 496, 151 N. W. 36; Messer v. Bruening, 32 N. D. 515, 156 N. W. 241; Olson v. Gray, 147 Cal. 112, 81 Pac. 415; Bessex v. C. & N. W. R. 45 Wis. 477; John Spry Lumber Co. v. Duggan, 182 Ill. 218, 54 N. E. 1002; Kennedy v. L. S. R. Co. 93 Wis. 32, 66 N. W. 1137; U. P. R. Co. v. Erickson, 41 Neb. 1, 59 N. W. 347; Cintek v. Stimpson R. Co. (Wash.) 37 Pac. 340; Libbey v. Scherman (Ill.) 34 N. E. 801; McCauley v. Norcross (Mass.) 30 N. E. 464.

The damages awarded plaintiff were not excessive. Pratt v. Pioneer Press Co. (Minn.) 20 N. W. 87; Stutz v. Chic. N. W. R. (Wis.) 40 N. W. 657; Bowers v. U. P. R. Co. 4 Utah, 215, 7 Pac. 251; Morgan v. So. Pac. Co. (Cal.) 30 Pac. 601; Scottowe v. Oregon S. L. R. Co. 30 Pac. 222; Gennaux v. N. W. I. Co. 72 Wash. 268, 130 Pac. 495; Chicago & E. I. R. Co. v. Holland, 18 Ill. App. 418; Reddon v. U. P. R. Co. 5 Utah, 233, 145 U. S. 657, 36 L. ed. 48; Cooper v. St. Paul City R. Co. 54 Minn. 379; Marks v. Hurley, 73 Wash. 437, 131 Pac. 1122; Mulhollan v. Western Gas Co. (Cal.) 131 Pac. 110; Yellow Pine Co. v. Lyons (Tex.) 159 S. W. 909; Dolphin v. Peacock Min. Co. (Wis.) 144 N. W. 112; Houston & T. C. R. v. Menefee (Tex.) 162 S. W. 1038.

Robinson, J. This is a personal injury suit in which defendant appeals from a verdict and judgment for $10,000.

In January, 1916, at Minot, the plaintiff was in the employ of defendant, and his daily business was to shovel coal so as to fill the tender of a switch engine. At the close of each day the engine and tender was spotted opposite the coaling dock and in such a way as to make it most convenient to throw the coal onto the tender. The dock was of timber and planks. It was 44 by 11½ feet. The longest side was parallel to the railroad track and at a proper distance of 18 inches from the side of the spotted tender. The coaling dock was constructed and it was loaded with a view of making it easy to throw the coal into

the tender. Its floor was about 3 feet above the ground and on a level with the floor of the engine and tender. The sides and ends were made of planks to prevent the coal from rolling off. The farthest side had five tiers of planks, and the nearest side, one tier of 10-inch planks, which were 2 or 3 inches thick.

On the night of the accident the dock was loaded with coal to a depth of about 5 feet in the center, and, excepting a clear space of about 10 feet at each end, the coal was plumb up and a little above the level of each side. On the lower side it was probably a little heapy. On the east end of the dock the plaintiff got onto the clear floor and for one hour he shoveled coal into the tender. Then he got off, went to the adjacent roundhouse, and on returning to the place where he had left his shovel, instead of getting onto the clear platform where he got off, he attempted to return by walking on the edge of the 10-inch plank. With a lighted torch lamp in his right hand he stepped from the gangway of the cab or tender onto the plank which was heaped with coal. The distance was 18 inches, and as he says: "You would have to use a little force to make the step." Of course he had to step against the coal with both feet, and the result was that the coal commenced rolling onto the edge of the plank. Then he had no footing and as a natural result he fell 3 feet between the dock and the tender and was badly hurt, though he was able to get up and walk home. There was no occasion or necessity for plaintiff to walk the edge of the plank; it was never made for that purpose. During four months the plaintiff had been working at the business, and he knew well the conditions of the dock and the coaling. There is not a particle of evidence to show that the coaling dock was in any way defective or that the defendant, or anyone of defendant's agents, was at fault.

Under the statute an employer must in all cases indemnify his employee for losses caused by the former's want of ordinary care.

An employer is not bound to indemnify his employee for losses suffered in consequence of the ordinary risks of the business in which he is employed. Section 6107.

But plaintiff claims under the Employers' Liability Act, which is to the effect that a common carrier, engaged in interstate commerce, is liable in damages to any person suffering injury while he is employed by such carrier in such commerce, for an injury resulting in whole or

in part from the negligence of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, roadbed, works, boats, warehouses, or other equipment. And in such action the negligence of the employee is not a bar to any recovery, and he is not held to have assumed the risk of his employment.

However, in this case it appears to the writer of this opinion that the plaintiff was not employed in interstate commerce. The majority are agreed, however, that the accident was not the result of any fault or want of care on the part of the defendant or its employees. It was the result of the plaintiff attempting to get on and to walk the edge of a plank, and that was entirely outside of his employment. It is much the same as if he had suffered the injury by attempting to walk a rope. Hence the plaintiff has no cause of action. Judgment reversed and action dismissed.

GRACE, J. (dissenting). The action is one for damages. In his complaint, the plaintiff, in substance, alleges and sets forth a cause of action against the defendant for the negligence of the defendant. The negligence of the defendant is alleged to be that it negligently and carelessly piled and placed on a certain coal dock a large quantity of coal, and had negligently and carelessly placed said coal on said dock in an unsafe and dangerous condition; that while plaintiff was in the act of stepping from the cab of the engine to the coal dock, a large piece or a quantity of coal, which the defendant had negligently and carelessly left in an unsafe and insecure position on the pile of coal on the dock, started to fall and rolled down the pile of coal, which piece of coal rolled under the foot of the plaintiff, and plaintiff stepped on the piece of coal, lost his balance, and was thrown and precipitated from the cab and coal dock to the ground between the engine and coal dock, receiving and sustaining dangerous, severe, and permanent injuries; that such injuries were received by reason of the carelessness and negligence of the defendant in failing to properly keep and maintain such coal dock, and by reason of the defendant's carelessness and negligence in failing to furnish a safe place for the plaintiff in which to work, and by reason of the defendant in keeping and maintaining said place in an unsafe and dangerous condition and the defendant's care-

lessness in piling a large amount of coal on the dock in a high pile in such condition that large chunks of the same rolled down from the pile of coal. Plaintiff further, in substance, alleges that defendant had negligently and carelessly failed to construct, keep, and maintain the coal dock in a safe condition, and the same was, at the time, in an unsafe and dangerous condition, and so constructed, kept, and maintained that at certain times the coal would roll off said coal dock; that the defendant negligently and carelessly failed to keep and maintain sufficient planks for the support of said coal to prevent same from rolling off from said dock. That plaintiff further alleges, the defendant is a corporation existing under and by virtue of the laws of North Dakota and engaged in the business of common carrier, freight and passenger, in the state of North Dakota, Minnesota, and other states, and conducted the main line of railway of common freight car and passenger through the state of North Dakota and the state of Minnesota, which said main line of defendant's railway passed through the city of Minot in the state of North Dakota; and that the said defendant, at all times mentioned in the complaint, owned, operated, and conducted the engines, cars, sidetracks, roundhouses, and coal docks and houses along the line of the defendant's railway; that said defendant, at all times mentioned in the complaint, was and is engaged in interstate commerce by railway and on the line of railway mentioned; that in connection with the business of defendant as interstate carrier of freight and passenger in the city of Minot, on the 22d day of January, 1916, prior to said time and since that time, defendant had constructed, kept, and maintained in the city of Minot what is known as a coal dock, where the defendant stored and kept a supply of coal for engines used by defendant in interstate commerce; that said coal dock was constructed, kept, and maintained by defendant on or near the sidetracks of defendant in the city of Minot; that the plaintiff was in the employ of the defendant as engine watcher and helper; that it was one of the duties of plaintiff, while he was employed by defendant, to fill with coal the engines owned, used, and operated by the defendant in interstate commerce.

Defendant, in his answer, admits that on or about the 22d day of January, 1916, the plaintiff was in the employ of the defendant as a helper about the roundhouse, which the defendant maintained in the city of Minot, and that it was one of the duties of the plaintiff, as a part

of his employment, to fill with coal the tender of a certain switch engine used and operated by the said defendant in switching cars in the yards of the defendant in the city of Minot. The defendant denies that, at the time of plaintiff's alleged injuries, he was engaged in the work connected with interstate commerce or in the preparation of equipment of any of the defendant's engines or appliances used by the defendant in interstate commerce, and denies that the coal dock or platform referred to in the complaint, and on which the defendant stored and kept his supply of coal, was so kept or maintained or that coal was so provided and kept thereon for the purpose of supplying coal for engines used by defendant in interstate commerce, and that said platform and supply of coal were maintained for the purpose of supplying coal for one of the switch engines used exclusively in the switch yards at Minot for switching cars, and for the coaling of certain other engines used by the defendant in intrastate traffic exclusively, said engine being operated on a branch line of the defendant, said road being wholly within the state of North Dakota. The defendant denies that it was guilty of any negligence in the maintenance, construction, or operation of the coal dock or platform, or in placing and keeping coal thereon, and alleges that the platform was properly constructed for the purpose for which it was used, and that coal was placed and kept thereon in the customary and usual and in a proper manner. Defendant further alleges that while it was a part of the work for which the plaintiff was employed to shovel coal from said dock or platform into switch engines in the evening of each day, said plaintiff was thoroughly familiar with the work, and that in shoveling coal from the platform into said tender it was natural that coal thereon should roll from the top of the pile from said platform towards the bottom thereof; that coal could not be removed therefrom or from any dock or coal shed under any other condition; that said conditions were, at all times, plainly to be seen by and apparent to the plaintiff, and that the risk of injury from coal so rolling, as described in the complaint, was known to and assumed by the plaintiff when he entered such employment and during all the time of his employment and at the time of the alleged injury set out in the complaint, and denies that the injuries, if any, sustained by the plaintiff, were caused by the negligence and carelessness of the defendant, and alleges that if the plaintiff was injured, as alleged in

the complaint or otherwise, such injuries were the direct result of the negligence and carelessness of the plaintiff, and not otherwise.

The material facts, concisely stated, are as follows:

The plaintiff was in the employ of the defendant from sometime in September, 1915, until January 22, 1916, as engine watcher and helper in the roundhouse at Minot. Other duties were to watch the engine used in the Minot yard while it was in the roundhouse at night; keep the fire therein, and, during the night, fill the tender of the switch engine with coal for use of the engine, the coal being shoveled from the dock in question by the plaintiff into the tender. Plaintiff's hours of work were at night, and usually from 6 o'clock in the evening to 7 o'clock the following morning. The coal dock was in the front of and east of the roundhouse, and on the south side of the railway track that entered the roundhouse. It appears to have been about 45 feet in length and $12\frac{1}{2}$ feet wide and $3\frac{1}{2}$ to $4\frac{1}{2}$ feet in height from the ground. Coal was kept upon such dock, from which the switch engine was coaled, and the testimony of witness Vickerman shows that other engines were coaled at the dock in question, denominating such engines as extra engines. On each end of the side of the coal dock and on the side furthest from the railway track, there were plank walls about $4\frac{1}{2}$ feet in height. On the side of the dock which fronted on the railway track, there was no wall excepting a plank 3 inches thick and 10 inches high. The switch engine in question was used for handling both interstate and intrastate shipments, or, in other words, it was used for handling and switching cars, some of which were loaded with goods for interstate and some intrastate shipments. Plaintiff was a young man between the age of twenty-three and twenty-four at the time of the injury, and was little less than twenty-five years of age at the time of the trial, and was receiving as wages $71 per month at the time of his injury. According to witness Britton, he went down to the dock at about 6 o'clock on the evening of the day of the plaintiff's injury, and he stated in his testimony the coal was low at the west end and low at the east end of the dock, and that there was practically 8 or 10 feet on the east end that had no coal at all, but in the center of the dock the coal looked as though it were piled about 5 feet high, which would make it about $4\frac{1}{2}$ feet above the board next to the track. There appear to have been no steps, ladder, or approaches for getting on or off the dock. Plaintiff was shoveling

coal from the dock into the tender of the engine from near the east end of the dock. He went to the roundhouse to attend to some work and in a short time returned, went upon the engine to attend to the fire and steam, came from there and went to the engine platform between the cab and tender and attempted to stop upon the coal dock, which was about the level with the engine platform. He had an oil-can torch in his hand and was returning to the dock to finish coaling the engine. As he stepped toward the dock, intending to step upon the 10-inch plank, a quantity of coal slid forward from the pile of coal toward the engine over the top of the 10-inch plank, and in such manner and time that the plaintiff stepped upon the chunk of coal and was thrown to the ground between the switch engine and the dock, and received the injuries for which damages are sought.

One of the questions presented before our consideration and decision is: Was the plaintiff, at the time of his injury, employed in interstate commerce within the meaning of the Federal Employer's Liability Act? That part of the Employer's Liability Act which relates to the question under consideration is as follows: "Every common carrier by railroad while engaged in commerce between any of the several states or territories, or between any of the states and territories, or between the District of Columbia and any of the states or territories, or between the District of Columbia or any of the states or territories and any foreign nation or nations, shall be liable in damages to any person suffering injuries while he is employed by such carrier in such commerce." [35 Stat. at L. 65, chap. 149, Comp. Stat. § 8657, 8 Fed. Stat. Anno. 2d ed. p. 1208.]

The real questions presented in this branch of the case are: Was the plaintiff, at the time of the injuries, engaged in doing an act or performing a service within the scope of his employment which contributed to and aided in carrying on interstate commerce? Was the plaintiff, at the time of the injuries, engaged in the rendering of services which assisted and contributed to the carrying on of interstate commerce? Could the defendant have carried on the interstate commerce over that part of its railway line and yard at Minot and have wholly dispensed with the services which plaintiff rendered or similar services? Was the service which plaintiff rendered a material part, however small, of interstate transportation? We are of the opinion that an

affirmative answer should be given to the first two and the last of the above questions, and a negative answer to the third question. Unless the plaintiff or other employee rendered service to the defendant such as plaintiff rendered, the switch engine which contributed in the moving and carrying on of the interstate commerce could not perform its service, which would be just as necessary in the general plan of carrying on interstate commerce as the engine which hauls the goods and merchandise transported within or without the state. The switch engine would be useless unless it were properly supplied with coal and properly taken care of, so that it could render the service for which it is intended. The different contributions of service to carry on interstate commerce may vary in degree, but if they contribute to the general plan or business of carrying on interstate commerce, they are part of it.

The part of the statute which we have quoted, in short, provides that every common carrier by railroad while engaged in interstate commerce shall be liable in damages to any person suffering injuries while he is employed by such carrier in such commerce. As we view it, the statute should be given a liberal construction to effect the purpose for which it was enacted, in preference to a technical construction which would practically have the effect to make the statute inoperative and ineffective to accomplish the purposes intended by its enactment. The part of the statute under consideration does not say that every common carrier by railroad while engaged in interstate commerce shall be liable in damages to any person suffering injuries, if, at the time of receiving such injuries, the person is engaged in performing acts of interstate commerce; but the statute says while he is employed by such carrier in such commerce. In other words, the purposes for which the person is employed and the continuance of the employment for that purpose to and including the time of the injury, as we view it, are what is, in fact, meant by the language of the statute quoted. If part of the duties at all times, of the person employed, is to render or contribute service which aids in carrying on interstate commerce, he is, at all times during the time of his service, employed in interstate commerce; for, at all times, he has the duty to contribute service which aids in carrying on interstate commerce, and this is true even though there is another duty to contribute service in intrastate commerce, and he may be said to be employed all the time for each purpose. If, under these circum-

41 N. D.—39.

stances, the person so employed is injured, he is injured while employed in interstate commerce; for his general duties hold him, at all times, to the performance of acts contributing to the carrying on of interstate commerce. If the person's employment and if he has a duty resting on him at all times during his employment to aid in and contribute to the carrying on of interstate commerce, he is engaged in assisting and carrying on interstate commerce, and must be held to be employed in such work, and this even though there is another duty resting on him to carry on intrastate commerce. As we have stated, the statute should receive a broad, liberal construction to effectuate the purposes for which it was enacted. We are satisfied the plaintiff, at the time of the injury, was engaged in work which contributed, in some degree, to the carrying on of interstate commerce.

We have examined with much care the cases cited by the appellant and find nothing therein which would change the view we have of this question. Facts in most of the cases cited are materially different than the one at bar, and for that reason the conclusion reached in such cases might be different than the one we have reached in this.

The next question for our consideration is the question of negligence and contributory negligence. These questions were for the jury. It decided them in favor of the plaintiff and we think properly so. It cannot be said, as a matter of law, that the verdict is not sustained by the evidence, or that the verdict finds no support in the evidence. It appears from the records in this case and from the testimony, that the coal dock in question was some $3\frac{1}{2}$ to 5 feet from the ground; that there was no means provided for an employee to get on and off the dock. That is, there was no ladder or any other means by which any employee might get on or off the dock. This being true, the employee was at liberty to select any means of getting on or off the dock he saw fit. There is no showing, in the testimony, that there was any particular way in which the plaintiff should have gotten on or off the dock; and the fact that he got onto the dock from the floor of the cab rather than have gotten down on the ground and crawled up on either side makes no difference in this case. He was not guilty of negligence by having attempted to step directly from the cab of the engine across to the coal dock, it being only a distance of 18 inches from the cab floor to the 10-inch plank on the coal dock. It appears that the coal was piled high on

a part of the coal dock, and, as the testimony shows, to a height of about 5 feet. It is easily seen that this is a great deal higher than the 10-inch plank on the side of the coal dock next to the 10-inch plank. If the defendant had placed more boards on the side of the coal dock next to the railroad track, the coal could not have rolled off and the injury could not have happened. All these questions were for the jury, and all the testimony in regard to these matters tended to establish negligence against the defendant. The plaintiff carried a torch when he attempted to step from the cab of the engine upon a 10-inch plank, and it appears from his testimony that just as he was about to step upon the 10-inch plank the quantity of coal rolled under his foot and he lost his balance and was thrown to the ground and severely injured. All the facts relative to the negligence of the defendant or the contributory negligence, if any, of the plaintiff, were submitted to the jury and they have found in favor of the plaintiff, and we think the verdict is supported by the evidence; and it cannot be said, as a matter of law, that the acts of the defendant and his conduct, as disclosed by the testimony, did not constitute negligence. The master is bound to use ordinary care to provide a safe place for the servant in which to perform his duties. In view of all the testimony in this case, we think the same tends to show the failure of the master to exercise such ordinary care, and the jury, by its verdict, so found, and the matter being a question of fact for the jury, it is its exclusive province to determine it.

The next question for consideration is the defense of assumption of risk. There is nothing in the testimony to show that the dangerous conditions which caused plaintiff's injury were at all obvious or could be reasonably anticipated, or that the plaintiff knew of and appreciated the dangers, if any. If the dangerous condition of the coal dock is chargeable to the negligence of the master if the coal thereon was piled in careless and negligent manner so that a portion of it rolled down and under plaintiff's feet at the instant of time he attempted to step upon the 10-inch plank and he was thereby thrown to the ground and injured, as shown by the testimony, the proximate cause of the injury is the master's negligence, and he should not be relieved from it, nor escape the consequence of his negligence by imposing the burden of his negligence upon the plaintiff under the doctrine of assumption of risk.

There is nothing in this case to show that the plaintiff knew or appreciated any danger or voluntarily assumed any risk. The jury determined all facts in favor of the plaintiff and thereby disposed of them, including the question of assumption of risk, and we think they reached the correct conclusion.

As to the question of excessive damages, we think the damages not excessive in view of the serious injury which the testimony shows the plaintiff received. We think there can be no merit in the claim of excessive damages. The testimony tends to show that plaintiff received serious injury to the lower part of his spine. He was treated by three different doctors, and the whole period of time in which he was under physician's care was between nine and ten months. The amount claimed by one of the physicians to be a reasonable charge for his services was $500. The testimony does not show how much was due or claimed by each of the other physicians. The plaintiff endured much suffering and pain and was exceedingly nervous. There is nothing in the record to indicate passion or prejudice. The question of the amount of damages is exclusively one for the jury. The verdict in this case is clearly not excessive. We think, also, that the recovery in this case may be had either under the Federal Employers' Liability Act or our own statute relative to railroad employers' liability, which is chapter 207 of the Laws of 1915, for the law of the case is practically the same under either. The liability of the defendant, under either law, would be practically the same. When such is the case it is really immaterial whether the employee was engaged in interstate or intrastate commerce. This was the holding in the case of Kansas City Western R. Co. v. McAdow, 240 U. S. 51, 60 L. ed. 520, 36 Sup. Ct. Rep. 252, 11 N. C. C. A. 857.

Defendant assigns many errors based upon the court's alleged error in overruling defendant's objection to many questions which related to the question as to whether or not defendant was engaged in interstate commerce. We think the court properly ruled on all such objections and properly admitted the answers to such questions and testimony. We have carefully examined all the facts in connection with this case as disclosed by the testimony and have examined the authorities cited by defendant, but find no reason for coming to any other conclusion than the one at which we have arrived; nor can we find any sufficient

error of law in the matter to warrant us, in any manner, interfering with the deliberate judgment of the jury as expressed in its verdict in plaintiff's favor. There was a fair trial, correct instruction of the law given, the facts fairly submitted to the jury, and the verdict is supported by the evidence.

## On Petition for Rehearing.

PER CURIAM. Plaintiff has petitioned for a rehearing. The petition assumes that the former decision held that the plaintiff was not engaged in interstate commerce. It is true the writer of the decision expressed this to be his opinion, but the remaining members of the court did not do so. They deemed this to be immaterial and expressed no opinion on the question. They were all agreed that no act of negligence had been shown. Hence, there was no liability on the part of the defendant either under the Federal or state law, and it was entirely immaterial which one was applied; for negligence is the basis of all liability under both laws, and there can be no recovery under either act in the absence of negligence on the part of the railroad company or some of its employees. Seaboard Air Line R. Co. v. Horton, 233 U. S. 492, 501, 502, 58 L. ed. 1062, 1068, 1069, L.R.A.1915C, 1, 34 Sup. Ct. Rep. 635, Ann. Cas. 1915B, 475, 8 N. C. C. A. 834; Manson v. Great Northern R. Co. 31 N. D. 643, 649, 155 N. W. 32.

Complaint is also made of the fact that the former opinion quotes a portion of § 6107, Comp. Laws 1913. And it is asserted that this section "is a fellow servant statute, and states the fellow servant rule, which rule was expressly abrogated by the North Dakota and Federal railway statutes." Section 6107 consists of two parts. The first part embodies the doctrine of assumption of risk, and the second part the fellow servant rule. The two are entirely distinct. It is true the fellow servant rule has been abrogated by both the state and Federal statutes. But the common-law defense of assumption of risk is still open to the defendant, except in case of violation of a statute passed for the protection of employees. Seaboard Air Line R. Co. v. Horton, and Manson v. Great Northern R. Co. supra. See also chap. 207, Laws 1915.

We adhere to our former conclusion,—plaintiff has failed to establish that he was injured by reason of any act of negligence on the part of the defendant or its employees.