# MATT FROELICH, Respondent, v. NORTHERN PACIFIC RAIL-WAY COMPANY, a Corporation, Appellant.

### (173 N. W. 822.)

**Personal injury — damages — master and servant — employers' liability act — interstate commerce.**

This is a personal injury suit in which the plaintiff recovered a verdict and judgment for $5.000 for a sad accident by which he lost four fingers from the left hand. He was a night workman in the roundhouse at Mandan. He was employed as an engine box packer. On a May morning, while it was yet dark, he went into the car shop, turned on the lights, started the circular saw, as he claims for the purpose of making a tool box to use in his employment; but he had no right or authority to use the saw and in doing so he was a mere trespasser. The injury did not result in whole or in part from the negligence of any officer, agent, or employee of the defendant, or by reason of any defect or insufficiency in its machinery or equipment. Judgment reversed and action dismissed.

Opinion filed November 30, 1918. Rehearing filed July 22, 1919.

Appeal from the District Court of Morton County, Honorable *J. M. Hanley,* Judge.

Reversed and dismissed.

*Watson, Young, & Conmy,* for appellant.

Negligence is never presumed, but is an affirmative fact, and the burden of proving it is on the plaintiff in order to make out a case. Manson v. G. N. R. Co. 31 N. D. 647; Adams v. Paper Co. 143 N. W. 658; Patton v. Texas & P. R. Co. 179 U. S. 658; Pioneer Const. Co. v. Sandberg, 98 Ill. App. 36; Ryan v. McCully (Mo.) 27 S. W. 533; Goldstein v. People's R. Co. (Del.) 60 Atl. 975; Duntley v. Inman Poulson Co. 70 Pac. 529; C. & N. W. R. Co. v. O'Brien, 132 Fed. 593; Sandrew v. R. Co. 142 Fed. 320; Mexican C. R. Co. v. Townsend, 114 Fed. 737; Butler v. Frazee, 25 App. D. C. 392; N. P. R. Co. v. Dixon, 139 Fed. 737; Greeley v. Foster (Colo.) 75 Pac. 351; Sappenfield v. Park R. Co. (Cal.) 27 Pac. 590; Chicago Teleph. Co.

NOTE.—Constitutionality, application, and effect of the Federal Employers' Liability Act, see notes in 47 L.R.A.(N.S.) 38; 48 L.R.A.(N.S.) 987; and L.R.A. 1915C, 47.

v. Schulz, 121 Ill. App. 573; Brownsfield v. R. Co. (Iowa) 77 N. W. 1038; Dana & Co. v. Blackburn (Ky.) 90 S. W. 237; Lane v. Missouri P. R. Co. (Kan.) 69 Pac. 626; Vissinaw v. R. Co. (Ky.) 89 S. W. 502; So. Bolt Car Works v. Schaefer (Md.) 53 Atl. 665; Wormell v. Maine C. R. Co. (Me.) 10 Atl. 49; Robinson v. Wright & Co. (Mich.) 53 N. W. 938; St. Louis R. Co. v. Hill (Ark.) 94 S. W. 914; Huff v. Austin (Ohio) 21 N. E. 864; Neeley v. Cotton Seed Oil Co. (Okla.) 75 Pac. 537; Duntley v. Inman P. & Co. (Or.) 70 Pac. 529; Higgins v. Fanning (Pa.) 46 Atl. 102; Green v. Power Co. (S. C.) 55 S. E. 125; Ry. Co. v. Lindamood (Tenn.) 78 S. W. 99; Moose Line Co. v. Johnston (Va.) 48 S. E. 557; Mo. K. & T. R. Co. v. Crowder (Tex.) 55 S. W. 380; Katerman v. Dry Fork R. Co. (W. Va.) 37 S. E. 683.

"There is no negligence shown where it appears that the machinery was such as is in common and general use." Omaha Bottling Works v. Theiler (Neb.) 80 N. W. 821; Higgins v. Fanning (Pa.) 46 Atl. 102; Fritz v. Electric Co. (Utah) 56 Pac. 90; Poneybelisk v. Coal Co. (Wis.) 74 N. W. 117; Manley v. Mpls. Paint Co. (Minn.) 78 N. W. 1050; Weeds v. Ry. Co. (Neb.) 99 N. W. 827; Law v. Central Dist. Printing & Tel. Co. 140 Fed. 558; Wash. Asphalt Block & Tile Co. v. Mackey, 15 App. D. C. 410.

A master owes his servant the duty of providing his machinery with the same kind of appliances or appliances equally safe, as those in general use by man of ordinary prudence in the same kind of business. Boyle v. U. P. R. Co. 25 Utah, 420, 71 Pac. 988; Chrismer v. Bell Teleph. Co. (Mo.) 92 S. W. 378; Shadford v. Ann Arbor St. R. Co. (Mich.) 69 N. W. 661; Richards v. Rough (Mich.) 18 N. W. 785; Briggs v. C. & N. W. R. Co. 125 Fed. 745; Titus v. Bradford Co. 20 Atl. 517; Rogers v. L. & N. R. Co. 88 Fed. 462; N. P. R. Co. v. Blake, 63 Fed. 45; Roberts v. Mill Co. (Wash.) 70 Pac. 111; Kehler v. Schwank (Pa.) 22 Atl. 910; Brock v. Witherbee, 98 N. Y. 562; Corbett v. School (N. Y.) 68 N. E. 997; Tomkins v. Machine Co. (N. J.) 58 Atl. 393; Demers v. Marshall (Mass.) 59 N. E. 454; C. & G. R. Co. v. Armstrong, 62 Ill. App. 228; Wabash Screen Door Col. v. Black, 126 Fed. 721; Westinghouse Co. v. Heimlich, 127 Fed. 92; Chrismer v. Bell Teleph. Co. 6 L.R.A.(N.S.) 492; Manson v. G. N. R. Co. 31 N. D. 643; Balding v. Andrews & Gage Elev. Co.

12 N. D. 267, 96 N. W. 305; Meehan v. G. N. R. Co. 13 N. D. 432, 101 N. W. 183; Scherer v. Schlaberg (N. D.) 122 N. W. 1000.

Plaintiff must show a defect creating a dangerous situation, and also that defendant had knowledge of such defect and the danger created thereby. Tolland v. Paine Fur Co. (Mass.) 56 N. E. 608; Duntley v. Inman Poulson & Co. 70 Pac. 529; Marquard v. Ball Engine Co. 122 Fed. 374; Mast. & S. Dec. Dig. § 125; Patton v. Texas & P. R. Co. 179 U. S. 658, 660, 664.

Knowledge of the defect or some omission of duty in regard to it must be shown. Looney v. Met. R. Co. 200 U. S. 486; Sappenfield v. Park R. Co. (Cal.) 27 Pac. 590; Brownfield v. R. Co. (Iowa) 77 N. W. 1038; Black v. Fair Asso. (N. D.) 164 N. W. 297; Meehan v. G. N. R. Co. 13 N. D. 432, 101 N. W. 183; Manson v. G. N. R. Co. 31 N. D. 643; Chybouski v. Bucyrus Co. (Wis.) 106 N. W. 833.

Where evidence shows it is just as probable accident happened by causes other than negligence of defendant, there can be no recovery. Patton v. Texas & P. R. Co. 179 U. S. 658, 660, 664; Boston v. Buffrom (Me.) 54 Atl. 392; Chesapeake & O. R. Co. v. Heath (Va.) 48 S. E. 508; Strasburger v. Vogel (Md.) 63 Atl. 202; Cerrilles Coal R. Co. v. Deserant (N. M.) 49 Pac. 807.

"Where the plaintiff knew the danger incident to the use of a dangerous machine without the safety device, even though there were no rules forbidding the use of same, he took his own chances in using same." Egnor v. Lumber Co. 92 N. W. 245; Purkey v. Coal Co. 50 S. E. 753; Lamotte v. Boyce (Mich.) 63 N. W. 517; W. & R. R. Co. v. McDade, 135 U. S. 554; Seaboard Air Line v. Horton, 233 U. S. 492; Jacobs v. So. R. Co. 241 U. S. 229; Manson v. G. N. R. Co. 31 N. D. 643; Pingree v. Leyland, 135 Mass. 398.

There can be no recovery in this action, neither the plaintiff nor the defendant being engaged in interstate commerce at the time of the injury. I. C. R. Co. v. Kelly, 167 Ky. 745, 181 S. W. 375; C. N. O. & T. P. R. Co. v. Tucker, 168 Ky. 149, 181 S. W. 940; Chesapeake & O. R. Co. v. Shaw, 182 S. W. 657.

It is prejudicial error to permit the jury to pass upon the question as to whether the defendants were negligent in any particular as charged in the complaint. Strange v. Lumber Co. 116 Am. St. Rep. 92, 96 S. W. 152; Walrod v. Webster County, 47 L.R.A. 480,

81 N. W. 598; Illinois C. R. Co. v. King, 70 Am. St. Rep. 93, 55 N. E. 552.

*Jacobsen & Murray*, for respondent.

The master owes the servant certain nondelegable duties, among which are reasonably safe instrumentalities and a safe place to work and to proper instructions. 26 Cyc. 1097, 1104, 1185; United v. Colgate Elev. Co. 18 N. D. 320; Sword v. McDonnell, 31 N. D. 494.

If the evidence shows there is no liability under the Federal act, as soon as that fact appears the defendant may then file a petition for removal, if entitled to it, if there be a diversity of citizenship. Thornton, Fed. Employers' Liability Act, 3d ed. § 193, p. 731; Strother v. Union P. R. Co. 22 Fed. 731; Powers v. Chesapeake & O. R. Co. 169 U. S. 91, 42 L. ed. 673.

When the action is brought under the Federal statute, and allegations are used which are sufficient to bring the action on a state statute or at common law, and the proof under the Federal statute fails, the plaintiff may go to the jury on the state statute or common law as his proof may show. Corbett v. Boston & M. R. Co. (Mass.) 107 N. E. 60; Thornton, Fed. Employers' Liability Act, 3d ed. § 212, pp. 313, 314; S. R. Co. v. Ainsley, 8 Ga. App. 325, 68 S. E. 1086; Winfree v. N. P. R. Co. 227 U. S. 96, 33 S. C. 273, 57 L. ed. 518, 173 Fed. 65.

ROBINSON, J. This is a personal injury suit in which the plaintiff recovered a verdict and judgment for $5,000 for a sad accident by which he lost four fingers from the left hand. Defendant moved for a directed verdict, for judgment notwithstanding the verdict, or, in the alternative, for a new trial, and appeals from an order denying the same.

Since January, 1910, at Mandan, plaintiff was in the employ of defendant as a roundhouse workman for some two years. He was helping at boiler making; then for three years he was employed as an engine box packer—a night workman—in the roundhouse, and that was his business at the time of the injury. His business was to pack and oil engine boxes and to change brasses. The packing is replacing "dope" or old grease in the cylinders, drive boxes or journals, so there may be no friction. The packing keeps them lubricated and oiled.

As it appears from plaintiff's testimony, he thought that in his business it would be well to have a tool box to carry his tools and to sit on when working under an engine, and he concluded to make one himself. Accordingly, toward the approach of a May morning, plaintiff went from the roundhouse to the farthest corner of the car shop and there turned on the lights and started up the machine. He says: "I looked for a board and found it. When I put on the switch the machine started to run right away. It run like lightning; the saw was in gear and I took the board and put it in there—when I had it about half way through all at once it started and jerked and wabbled, and the first thing I noticed the board was gone through my hands and I looked at my hand and the four fingers were gone." He says the board he started to rip was 12 x 30 inches, and at the time of the accident it was ripped about half through.

Joseph Zuger, the roundhouse foreman, testified that he heard of the accident and went to the car shop early in the morning. He examined the board that plaintiff had been sawing; it was a piece of car roofing 5 or 6 inches wide and 7 or 8 feet long; it was laying in the saw and ripped about halfway through and spots of blood all over it. If that is true, the board was more suitable for kindling wood than for the making of a tool box.

The action is brought under the Federal Employers' Liability Act, which is, in effect, the same as chap. 207, Laws 1915. Under the act a common carrier by railroad, while engaged in interstate commerce, is liable in damages to any person suffering injury while he is employed by such carrier in such commerce. It is liable for such injury or death, resulting in whole or in part from the negligence of any of the officers, agent, or employees of such carrier, or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, or other equipment. And the negligence of the injured party is not a bar to any recovery, though it may reduce the amount.

However, in this case there are several objections to the right of plaintiff to recover anything:

(1) The making of a tool box was no part of interstate commerce, and it was entirely outside the line of plaintiff's employment. He was employed as an engine box packer, and not as a carpenter. His employment and his duties were in the roundhouse. He had no right

or authority to go into the car shop, turn on the lights, and attempt to use the saw. In doing that he was a mere trespasser. Near the saw there was posted a conspicuous sign: "This saw is to be used by carmen only." And in addition the plaintiff was expressly warned against attempting to use the saw. It was outside of his employment. His place was in the roundhouse and he had no right to enter the car-shop.

(2) However, if the plaintiff had any leave or license to use the circular saw, there is no showing that it was in anyway defective. There is no proof of a defect in any of the machinery. For some twenty years the sawing apparatus has been in daily use by the numerous carpenters of the car shop without injury to any of them, and so the plaintiff might have used it without any risk or injury if he had not neglected to use the safety guard. When the guard is used it covers the saw and protects the operator from all danger. Without the use of the guard no one should ever attempt to use the buzz saw.

It is entirely clear that at the time of the injury the plaintiff was not employed to use the circular saw, and in using the saw he was a mere trespasser. His injury did not result in whole or in part from the negligence of defendant or any of its officers, agents, or employees, or by reason of any neglect or insufficiency in its cars, engines, appliances, machinery, or equipment. Hence the plaintiff has no cause of action. Judgment reversed and action dismissed.

CHRISTIANSON, Ch. J., and BRUCE, J., concur.

BIRDZELL, J. I concur in the result.

GRACE, J. I dissent.

## On Rehearing.

PER CURIAM. A rehearing was ordered in this case. After full argument and reconsideration of all questions involved, we are satisfied that the result reached in the former opinion is right. Certain features of the case—tending to support the conclusions formerly reached—were even more clearly brought forth on the reargument, and we deem it

desirable to supplement the former opinion by a reference to those features of the case.

The plaintiff was a night box packer, employed in defendant's round-house at Mandan. The general roundhouse foreman was Joseph Zuber. He was in general charge both night and day, but during the night there was a subordinate or night foreman. The night foreman was named Vickers. Plaintiff testified that about a month before the accident he asked Vickers for a tool box. That about a week before the accident plaintiff asked Vickers about the matter, and that Vickers stated he couldn't get a tool box for him, and said to the plaintiff: "When you get time make it yourself." On the night the accident occurred Vickers was off duty, and one Cantwell was acting as night foreman. It is undisputed that the plaintiff said absolutely nothing to Cantwell about either wanting a tool box, or intending to make one, or wanting to use the saw for any purpose. The undisputed testimony shows that Cantwell had absolutely no knowledge that plaintiff intended to use the saw, and that the first knowledge he had that plaintiff would do so was after the accident had occurred. As stated in the former opinion there was posted near the saw a large sign reading, "This saw is to be used by carmen only." The evidence showed and the jury found (in answer to special interrogatories) that at the time of the injury there was an existing rule "to the effect that none but carmen should use the saw in question," but that this rule was not followed by em-ployees or enforced by the defendant. The jury further found (in such special interrogatories) that the plaintiff in the exercise of reason-able care should have known of such rule; and that an ordinarily prudent man in the exercise of reasonable care and the use of his eyesight should have noticed and obeyed the sign which stood on the wall near the saw, if the rules had been enforced.

The roundhouse foreman, Zuber, testified: "There were instruc-tions that no employee in my department was to go into the car shops without my permission." He also testified: "In 1915, about Feb-ruary, 1915, . . . one of the men in the car shops had sawed his finger, . . . and we have what is called a 'Careful Club' or bureau of information, and the idea of this is to educate all of our employees to be careful not to do anything that is liable to cause an injury or to injure anyone else. I, as well as the other foreman, was ordered by

our superior officers to call all of our employees into the office and go over all of the injuries or accidents that had happened that we knew of, especially in our own departments, and to call the men's attention to the various instructions that had been put out, and I called them all into my office on the 10th day of February, all the machinists and their helpers and box packers. Among other things, I told them about this man going down and using this saw, and he had no business to use it. I said, 'There is a man that took a chance and got hurt. The railroad company has spent thousands of dollars trying to teach you boys to stop doing those things.' *I instructed them that I did not want any man in my department to go near the saw, and that if I knew of any man going near that saw I would discharge him from the service."* Zuber further testifies that the plaintiff, Froelich, was present at the time those instructions were given. Zuber's testimony to the effect that the instructions were given, and that the plaintiff was present, is corroborated by other witnesses, and is not contradicted by anyone. And while the plaintiff was recalled after this testimony was given, he did not in any manner deny that he was present at the time such instructions were given. And there is absolutely no evidence tending to show that the foreman, Zuber, had any knowledge or information that the plaintiff or any of the other employees were violating the instructions. Nor is there any evidence tending to show any violation of the order during the daytime. But it is contended that the order was disregarded at night; that the night foreman had knowledge of such violations, and that the jury was justified in finding that the order had been waived.

It is true plaintiff testified that he had used the saw. But he does not claim nor is there any evidence tending to show that he ever used it in the presence of anyone. Nor is there any evidence showing that the night foreman had any actual knowledge of plaintiff's violation of the order, and the positive testimony of both Vickers and Cantwell is to the effect that neither of them knew or had been informed of such violations. It is true, the evidence does show that upon two occasions Vickers sent the plaintiff to the carpenter shop for certain boards, but the uncontradicted testimony showed that it was customary for the carpenter to leave boards sawed into proper lengths for the various purposes for which boards would ordinarily be needed during the night-

time, and that if any extraordinary occasion occurred the carpenter could be called at any time during the night. In fact the plaintiff testified that on the night the accident occurred "there was quite a lot (of sawed boards) laying there besides the saw."

The only order which plaintiff claimed to have received with respect to making a tool box was about a week before, when, he claims, Vickers said: "When you get time make it yourself." Vickers denied this conversation, and testified that a tool box was not necessary, and that the tools might, and frequently were, carried in the dope pail. The undisputed testimony also showed that the carpenter—Larson—during the daytime would saw any boards that were requested for the use of the night men, and the plaintiff could have had Larson saw whatever boards that might have been needed for the tool box. Clearly there is no evidence from which reasonable men could find that defendant either knew or should have known that plaintiff or others violated the order relating to the use of the saw, so that it may be said that defendant acquiesced in such violation and waived the order. Nor is there any evidence from which reasonable men could find that the night foreman ordered plaintiff to use the saw in making a tool box. In our opinion the evidence upon this feature of the case warrants but one conclusion,—that the plaintiff was injured while, and as a result of, wilfully violating a reasonable and lawful order promulgated by the defendant for the safety of its employees. He disregarded the order, and sought to do that which he had been expressly forbidden. His own act, and not the act of the defendant, was the cause of his injuries. Great Northern R. Co. v. Wiles, 240 U. S. 444, 60 L. ed. 732, 36 Sup. Ct. Rep. 406. See also 18 R. C. L. 498; Labatt, Mast. & S. § 273.

Nor do we believe that there is any evidence to support a finding that the defendant was guilty of negligence with respect to the saw itself. The evidence shows that a guard was provided for the saw in the summer of 1915. Larson, the carpenter, had used the saw for something like eighteen years before that without any safety device. It is said Larson used the saw without using the guard.

His testimony is:

Q. You did not always use that guard?

A. Not in the beginning, because I forgot once in a while because I used the saw so much without it before it was put there, but lately I don't use it without using the guard.

The guard was right at hand, over the saw. In order to use the guard, all that was necessary to do was "just to pull it right down over the saw, and it is supposed to be right on the board when you are sawing." Larson testified that the guard was in good condition. Villaume, superintendent of a box factory where some thirty similar saws are in operation, testified that the guard was a good one, and that he did not know of a better one. The undisputed testimony is to the effect that plaintiff could not possibly have been injured if he had used the guard.

The plaintiff said he had never used any other buzz saw. All his knowledge of buzz saws was gained from the saw in question. The same is true of the only other witness who testified for the plaintiff on this point. Neither of them could, nor did they pretend to, testify that the saw was not installed in the usual manner. On the other hand the positive testimony on the part of defendant's witnesses was to the effect that both saw and guard were properly installed in the usual manner, and were both in the best of condition. The plaintiff gave as his reason for not using the guard that Larson had said it was "unhandy," and "not good." There is no contention that Larson was instructing the plaintiff in the use of the saw, and the undisputed testimony is to the effect that Larson never knew that plaintiff used it, and plaintiff admitted that he had never seen Larson operate the saw since he (plaintiff) became a night box packer. Of course most safety devices may be said to be unhandy, and most safety regulations may at times be irksome. It probably required more time and effort to use the guard than to operate the saw without it, just as it takes longer time to travel a given distance and obey speed regulations than by exceeding them.

Reference has been made to the fact that sometimes the belt would slip over on the neutral pulley, and that when it did the board would wabble. Plaintiff testified to this. And yet under his own testimony he could not possibly know this to be so, for he testified positively and without equivocation or contradiction that the belt slipped only

once while he was operating the saw, and that upon that occasion he had not yet put in a board, but had just started the saw. The testimony shows, without dispute, that the belt was in good condition, and the neutral pulley a usual thing. In fact according to the testimony the neutral pulley is a safety device. If the saw becomes overcrowded, the belt will slip off, and on to the neutral pulley, and the saw will stop. It is undisputed that after the belt slips off, it cannot possibly go back on and start the saw until or unless the lever is thrown over so as to put the belt back on the active pulley again. In this case the plaintiff testified positively and without contradiction that the saw continued to run after the accident had occurred, and until the plaintiff shut it off.

Before plaintiff can recover under either the Federal or the state Employers' Liability Acts, he must prove that his injuries were occasioned by the negligence of the defendant or its employees. In other words, he must prove: (1) The existence of some duty or obligation on the part of the defendant toward the plaintiff; (2) a failure to discharge that duty; and (3) injury resulting from such failure. Koofos v. Great Northern R. Co. 41 N. D. 176, 170 N. W. 862; Vanevery v. Minneapolis, St. P. & S. S. M. R. Co. 41 N. D. 599, 171 N. W. 610; Wingen v. Minneapolis, St. P. & S. Ste. M. R. Co. ante, 517, 173 N. W. 832; Great Northern R. Co. v. Wiles, 240 U. S. 444, 60 L. ed. 732, 36 Sup. Ct. Rep. 406. In this case plaintiff was injured by his own acts, and not by reason of any act of the defendant. Plaintiff could not possibly have been injured if he had not intentionally and deliberately violated the orders of the defendant. Nor could he have been injured if he had used the guard with which the saw was equipped. Plaintiff was not injured while doing something in the line of his duty, but while doing something which the defendant had expressly and unequivocally said that he must not do.

We adhere to our former conclusion, the causal negligence in this case was the negligence of the plaintiff. The action is dismissed.

Bronson, J. (upon rehearing). I dissent. This is an action for personal injuries. Upon trial in the district court of Morton county before a jury, a verdict was rendered for the plaintiff in the sum of $5,000. Judgment was entered accordingly. Thereafter, the defend-

ant made a motion for judgment *non obstante,* or, in the alternative, for a new trial. The trial court denied such motion. The defendant has appealed from the judgment and the order denying such motion. In a former opinion this court reversed the judgment and ordered dismissal of this action. There is evidence in the record to show the following facts:

The plaintiff was injured on May 20, 1916, while in the employ of the defendant as a night box packer. His duties consisted in packing the driving boxes of locomotives, changing brasses, and doing other incidental work upon and concerning locomotives under the direction of his foreman. The locomotives upon which he did work were those that hauled interstate passengers and freight, as well as local engines upon branch lines to the north and south. The defendant concedes in the record that the railway company at the time was engaged in interstate commerce. It does not concede, however, that the plaintiff, at the time of his injuries, was engaged in interstate commerce. At the time of the injury, the plaintiff was the only man employed as night box packer. There was another man working opposite him on the day shift. In his work as night box packer it was necessary for him to have tools and a tool box. He had worked for the company since 1910, first, as a helper to boiler makers, then as a machinist's helper, and later, since February 18, 1916, as such night box packer. At Mandan the defendant had a roundhouse as well as a car shop. The work of the plaintiff was largely performed in the roundhouse. In the car shop there was a saw, a sort of rip or buzz saw, used for the purpose of ripping or sawing boards. This saw was the same saw that had been used at that place by the defendant, as one witness testified, since 1896. The saw was a stationary saw inserted in a table, standing by itself in the room of the car shop. At the time of the accident there was a guard, home made, for the saw, which had been constructed some seven or eight years previous. This saw was customarily used by the day engine carpenter, named Larson. He testified that, once in a while, he operated this saw without using the guard. He also testified that sometimes the belt would slip from the live pulley to the neutral pulley and stop the saw if the stick was crowded too hard against the saw; that if you did not throw over the belt with the lever far enough on the pulley it might work over on the loose or neutral

pulley. The plaintiff worked under the supervision of the night fore-man. He was his boss. During the night, when the accident occurred, one Cantwell was such night foreman. This foreman testified that the plaintiff was under the instructions of the foreman, and was required to do what the foreman told him to do. That he operated the saw sometimes; that it was put in operation by a lever and belt connected with a power shaft in the ceiling above. That to operate the saw, the lever was pulled, and it threw the belt from a neutral or loose pulley upon a solid or live pulley; that sometimes the lever would move itself so as to shut off the power. That is, the belt would work over upon the loose pulley so that there would be a time when the belt would be half on the live and half on the neutral pulley. This would cause the saw to slow up. That it was necessary to watch the lever to keep the saw in gear. That the saw had to be fed by hand. That a board being fed to the saw would not be as steady while the saw was shifting or shutting off. That "the board would not handle quite as smooth." He further testified that there was no one in the car shop to do sawing at night. That if a packer needed any sawing done he would have to get it sawed the best way he knew how, and would have to use his best judgment in that regard; that a car shop man might be called when there was a five hours' job, but not for ten, twenty, or thirty minutes.

The plaintiff, before the night of this accident, had used this saw to some considerable extent for ripping or sawing boards in connection with his duties as night box packer. The foreman was over with him two nights before the accident, and the foreman used such saw. Some-times the plaintiff used the saw twice in a night, possibly he used it four times a week. For a time the plaintiff had used an old tool box. He put in an order for a new tool box, but could not get one furnished to him. He testified that his foreman, one Vickers, told him to make one. This tool box could be necessarily used by him not only for carrying tools, but also as a seat when working under engines in the pit. On the night of the accident, the plaintiff started to make a tool box. For that purpose, he took a board, went over to this saw, and started to use it. He did not use the guard. He had been advised before by the day engine carpenter that he did not use the safety guard; that it was unhandy and no good; that furthermore he did not use it because it was too wabbly; that he acted upon Larson's advice.

That he operated the saw in a proper way; that he had seen one Larson operate the saw and he operated the same as he did; that when the board which he had was about half sawn through, the saw started to jerk and wabble; the first thing he noticed the board was gone through his hands; he looked at his hands and four fingers were gone.

The defendant introduced testimony showing that there was a sign posted in the car shop stating that such saw was to be used by carmen only; that the roundhouse foreman, one Zuber, called in the men for a conference in February, 1915, and gave instructions that no employee in the roundhouse should go into the car shop without his permission, and that he did not want any of his men to go near this saw, and that if they did he would discharge them. That the plaintiff was there at the time of this conference. He also testified that the box packers did not come under the class of carmen who were under his jurisdiction. The defendant also introduced testimony to show that the board which the plaintiff was sawing had a crack in it; that the plaintiff so admitted; that the saw was in good condition as well as the guard placed thereover; that the plaintiff violated the defendant's rules and instructions. The case was submitted to the jury upon sixteen special interrogatories in addition to a form of general verdict. The jury, in addition to returning a general verdict for the plaintiff, found upon these special interrogatories that the defendant was negligent in having defective machinery, and not more strictly enforcing rules in the operation of the saw; that the plaintiff did not know the condition of the saw and appreciate the dangers incident to its use; that as an ordinarily prudent man he would not have known the dangers of the saw and appreciated its risks; that there was at the time a rule to the effect that none but carmen should use the saw, but that the rule was not followed by the employees or enforced by the defendant; that the plaintiff in the exercise of reasonable care should have known of such a rule; that as an ordinarily prudent man he would have noticed the sign on the wall, if the rules had been enforced; that an ordinarily prudent man would not use the saw without using the guard if it had been satisfactory; that the plaintiff used the saw as an ordinarily prudent man; that the injury was not occasioned by accident; that the plaintiff suffered $5,000 in damages; that plaintiff was not guilty of contributory negligence and no deduction should be made from the

damages suffered; that the guard attached was defective because not firm; that there was not a safer way of using the saw; that the plaintiff knew or should have known, in the exercise of ordinary care, that the belt moved from the solid pulley on the neutral pulley, not by reason of plaintiff's action. These numerous questions, so submitted to the jury, demonstrate by the manner in which they were answered, that the jury exercised a high degree of intelligence, keenly appreciating the issues in this action.

Upon these numerous special interrogatories, the jury have passed upon every issue of fact, finding negligence on the part of the defendant and absence of contributory negligence and assumption of risk on the part of the plaintiff. Their findings are conclusive upon this court unless there is no evidence in the record to justify them as matter of law. The judge who presided at the trial, and who saw and heard the witnesses, denied the motion of the defendant for judgment *non obstante,* or for a new trial.

Accordingly, upon this record, so passed upon by the jury in such minute detail through their special findings, and upheld as a matter of law upon such findings by the trial judge, the verdict should and must be upheld if there is any evidence in the record to sustain such findings.

The questions of plaintiff's contributory negligence and assumption of risk were clearly for the jury. This saw was there for use in connection with the duties of the plaintiff as night box packer. It necessarily had to be used if he were to perform those duties in accordance with the orders given by the foreman; there was no night engine carpenter to work the saw when plaintiff was in the performance of his duties. The engine carpenter who worked days manifestly could not be called every time a board needed to be sawed that required a moment's time. The plaintiff was told to do his work and to get the sawing done as best he knew how. The fact that the defendant at a time considerably previous gave instructions not to use this saw except by car shop men, and that they had a sign there to that effect posted, has no bearing, as a matter of law, when there is evidence that the defendant specifically disregarded these instructions and assigned work to the plaintiff which required him, or directed him, either expressly or impliedly, to use this saw. An employee cannot hide behind a viola-

tion of an instruction to escape liability when such employer has itself violated such instructions and has permitted or directed its employee so to do.

The cause of action set up in the complaint is within the terms of the Federal Employers' Liability Act. The facts, as alleged in the complaint, are within the terms of the statute (Sess. Laws 1915, chap. 207), which is similar to, and substantially follows, the Federal Act, if at the time the plaintiff in fact was not engaged in interstate commerce.

It is a serious question upon the record, whether the plaintiff was an employee engaged in interstate commerce at the time the accident happened.

In Shanks v. Delaware, L. & W. R. Co. 239 U. S. 556, 558, 60 L. ed. 436, 438, L.R.A.1916C, 797, 36 Sup. Ct. Rep. 188, the test is stated as follows: "Was the employee at the time of the injury engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?" In that case, the railroad company engaged in both interstate and intrastate commerce, conducted an extensive machine shop for repairing parts of locomotives, wherein the plaintiff usually worked in repairing certain parts of such locomotives, but on the day he was injured he was performing solely the work of taking down and putting in a new location, an overhead shaft in the shop. It was held that he was not then employed in interstate commerce.

Likewise, in New York C. R. Co. v. White, 243 U. S. 188, 199, 61 L. ed. 667, 673, L.R.A.1917D, 1, 37 Sup. Ct. Rep. 247, Ann. Cas. 1917D, 629, 13 N. C. C. A. 943, this test was applied, and it was held that a night watchman charged with the duty of guarding tools and materials intended to be used in the construction of a new station and a new track upon a line of interstate railroad was not engaged in interstate commerce, because it bore no direct relation to interstate transportation and had to do solely with construction work. So, in Delaware, L. & W. R. Co. v. Yurkonis, 238 U. S. 444, 59 L. ed. 1397, 35 Sup. Ct. Rep. 902, an employee mining coal in a colliery operated by the railway and intended to be used in its locomotives in interstate commerce was not engaged in interstate commerce. In Illinois C. R. Co. v. Behrens, 233 U. S. 473, 478, 58 L. ed. 1051, 1055, 34 Sup. Ct.

Rep. 646, Ann. Cas. 1914C, 163, 10 N. C. C. A. 153, the court stated the test to be, "Is the work in question a part of the interstate commerce in which the carrier is engaged?" and held that a fireman on a switch engine who received a fatal injury while the switch engine was moving several cars, all loaded with intrastate freight, from one part of the city of New Orleans to another, was not engaged then in interstate commerce, even though his general work extended to and covered interstate commerce. Again in Illinois C. R. Co. v. Peery, 242 U. S. 292, 61 L. ed. 309, 37 Sup. Ct. Rep. 122, a freight conductor who was injured on a return trip between two points in Kentucky while the train was carrying intrastate freight alone was not engaged in interstate commerce although on the outward trip such train carried interstate freight. So, in Erie R. Co. v. Welsh, 242 U. S. 303, 61 L. ed. 319, 37 Sup. Ct. Rep. 116, a yard conductor who was injured while seeking, in the performance of his duties, further orders in making up trains, which orders, if they had been received by him, had he not been injured, would have required him to make up an interstate train, was not engaged in interstate commerce.

In Minneapolis & St. L. R. Co. v. Winters, 242 U. S. 353, 61 L. ed. 358, 37 Sup. Ct. Rep. 170, Ann. Cas. 1918B, 54, 13 N. C. C. A. 1127, an employee in the roundhouse of the railway company who was injured while making repairs upon an engine which prior to the injury on October 18th pulled interstate and intrastate freight, and likewise on October 21st subsequent to the injury pulled such freight, was not engaged in interstate commerce. It was further held that the evidence offered was not sufficient to bring the case within the terms of the Federal Act; that the next work of the engine so far as appeared from the evidence might be interstate or confined to Iowa, as it should happen. See 126 Minn. 260, 263, 148 N. W. 106. Likewise, in Chicago, B. & Q. R. Co. v. Harrington, 241 U. S. 177, 60 L. ed. 941, 36 Sup. Ct. Rep. 517, 11 N. C. C. A. 992, a switchman killed while switching coal of the railway company from a storage track to a coal shed was not engaged in interstate commerce although such coal had been hauled in interstate commerce, or might be used thereafter in locomotives engaged, or about to be engaged, in interstate or intrastate traffic.

On the other hand, in North Carolina R. Co. v. Zachary, 232 U.

S. 248, 260, 58 L. ed. 591, 596, 34 Sup. Ct. Rep. 305, Ann. Cas. 1914C, 159, 9 N. C. C. A. 109, a fireman who had been inspecting, firing, and repairing his engine preparatory to a trip to be performed as a part of interstate commerce, and who, after temporarily leaving his engine, presumably to go to a boarding house, was injured within the railway yards, was held to be on duty and employed in interstate commerce.

So, in Chicago & N. W. R. Co. v. Gray, 237 U. S. 399, 59 L. ed. 1018, 35 Sup. Ct. Rep. 620, 9 N. C. C. A. 452, where the state court of Wisconsin rendered a large verdict for a hostler whose duties consisted in receiving and repairing engines for departure in both interstate and intrastate commerce, and who was injured while walking in the yards to a rest house, where he could await his next call to duty, it was held that such hostler was not then engaged in interstate commerce, and where the railway company, upon writ of error to the Supreme Court of the United States, contended that the hostler then was engaged in interstate commerce, it was held unnecessary to determine the question, for the reason that the court did not perceive that any difference was made, for the reason that if there was any error it did not do the railway company any harm. Further, held that there are conditions and similarities between the Wisconsin and the Federal statutes, but that the court did not perceive that there is any difference that made the railway company's position worse if tried on the hypothesis that the state law governed.

In Pedersen v. Delaware, L. & W. R. Co. 229 U. S. 146, 57 L. ed. 1125, 33 Sup. Ct. Rep. 648, Ann. Cas. 1914C, 153, 3 N. C. C. A. 779, an iron worker in the employ of the railway company repairing its bridges was run down and injured by an intrastate passenger train through the negligence of the engineer while carrying a sack of bolts to be used in repairing a bridge used both in interstate and intrastate commerce. The court stated that under the Federal statute the carrier was charged with the duty of exercising appropriate care to prevent defects in its appliances, machinery, tracks, etc., used in interstate commerce; that, independently of the statute, the court was of the opinion that the work of keeping such instrumentalities in a proper state of repair while thus used is so closely related to interstate commerce as to be in practice and in legal contemplation a part of it. That

the true test always is, "Is the work in question a part of the interstate commerce in which the carrier is engaged?" Concerning the contention made that interstate commerce by railroad can be separated into its several elements and the nature of such determined regardless of its relation to others, or to business as a whole, the court further said that a track or bridge may be used in both interstate and intrastate commerce, but that when it is so used it is none the less an instrumentality of the former, nor does its double use prevent the employment of those who are engaged in its repair, or in keeping it in suitable condition for use, from being in the employment of interstate commerce. It was accordingly held that the iron worker injured was engaged in interstate commerce.

In Louisville & N. R. Co. v. Parker, 242 U. S. 13, 61 L. ed. 119, 37 Sup. Ct. Rep. 4, a fireman who was killed upon a switch engine then engaged in transferring an empty car, not moving in interstate commerce, from one switch track to another for the purpose of being able to reach and move an interstate car, was engaged in interstate commerce. So, in Erie R. Co. v. Winfield, 244 U. S. 170, 61 L. ed. 1057, 37 Sup. Ct. Rep. 566, Ann. Cas. 1918B, 662, 14 N. C. C. A. 957, an engineer of a switch engine whose duties consisted in switching freight cars about in the yard, containing both interstate and intrastate freight, and who was killed after the completion of his day's work, and while leaving the yards, was held to be engaged in interstate commerce. It was held that his day's work consisted in an engagement in both interstate and intrastate commerce, and that, in leaving the yard at the close of his day's work, the deceased was discharging a duty of his employment. In Southern R. Co. v. Puckett, 244 U. S. 571, 61 L. ed. 1321, 37 Sup. Ct. Rep. 703, Ann. Cas. 1918B, 69, a car inspector of the railway company, who had theretofore been engaged in inspecting cars put in an interstate train, and who was injured while carrying some blocks on his shoulder to be used in jacking up a wrecked car to which he had gone, in obedience to instructions, on account of a wreck that had occurred in the yards, was engaged in interstate commerce. In this case the court quotes with approval the holding of other cases that preparatory movements in aid of interstate transportation are a part of such commerce, within the meaning of the Federal act.

In the case at bar it is practically conceded by the defendant, and established by the evidence, that the engine upon which the plaintiff performed his duties was indiscriminately used in intrastate and interstate commerce.

Upon the trial, among other things, the following proceedings were had covering this matter:

The Court: "This seems wholly unnecessary to prove that the Northern Pacific Railway Company is engaged in interstate commerce, and that as to the engines, even the switch engines are engaged in interstate commerce. That is certainly a fact, and it ought not to be necessary to spend any time proving that the Northern Pacific and those engines are in that business. It is an entirely different question as to whether or not the man was engaged in interstate commerce."

Plaintiff's counsel: "Does counsel for the defendant admit that the court's contention is substantially correct?"

Defendant's counsel: "As I understood, your statement is that the Northern Pacific is engaged in hauling interstate freight and interstate passengers, and that the engines here in the roundhouse at Mandan are used in hauling these trains, or at least some of them are used in hauling these trains."

The Court: "That would be taken as correct for the purposes of this case, as to being engaged in interstate commerce."

Defendant's counsel: "No question about it."

It is not to be denied in the record that the plaintiff's usual duties were in connection with interstate transportation, and that his work so closely related to such interstate transportation as to be practically a part of it. The prime question, however, is, whether the plaintiff in preparing the board for this tool box was at the time of his injury, in fact then engaged in interstate commerce, or in a work so closely related to it as to be a part of it. If he had been engaged at work upon the engine at the time, or while sitting beneath the engine was sawing a board for use in connection with the engine, or the repairing of it, or was nailing this board, which had been sawed, on the tool box which he had with him, while at work upon the engine, and then was injured, it would appear that the plaintiff could then be fairly said to be within the terms of the Federal act. Upon the evidence and the findings it is clear that the plaintiff was not sawing this board for

purposes of his own. He was fashioning an instrumentality in the course of his duty, and pursuant to the instructions given to him concerning an instrumentality necessary to be used in interstate commerce or in connection with it. If the saw had been a portable saw which the plaintiff might have had right beside him while he was performing his duties upon the engine, again it would appear that the plaintiff, while sawing the board in connection with his work upon the engine, would be within the terms of the Federal act. It might therefore well be held, within the decisions of the United States Supreme Court, although we do not so determine nor deem it necessary so to determine, that the plaintiff at the time was engaged in the line of his duty and in connection with interstate commerce; that his duties were preparatory to a movement in interstate commerce, if it be conceded that all of the engines upon which he worked were used in interstate commerce.

Well might the engine upon which plaintiff performed his duties be deemed an instrumentality of interstate commerce the same as the bridge was in Pedersen v. Delaware, L. & W. R. Co. 229 U. S. 146, 57 L. ed. 1125, 33 Sup. Ct. Rep. 648, Ann. Cas. 1914C, 153, 3 N. C. C. A. 779, in view of the practical concession in the record that such engines were indiscriminately used in interstate commerce. Surely the principle does not deserve recognition that an employee engaged in interstate commerce steps without such employment whenever, during the course of such employment, he wipes off a wrench, cleans a shovel, sharpens a tool, or repairs or fashions an instrumentality necessary and incidental to the performance of his work.

The fact that the plaintiff was injured by causal negligence proceeding from the act of defendant's agents or officers, or through an instrumentality not then engaged in interstate commerce, does not deprive the plaintiff of his right of recovery as an employee engaged in interstate commerce. Pedersen v. Delaware, L. & W. R. Co. 229 U. S. 146, 149, 57 L. ed. 1125, 1127, 33 Sup. Ct. Rep. 648, Ann. Cas. 1914C, 153, 3 N. C. C. A. 779; Second Employers' Liability Cases (Mondou v. New York, N. H. & H. R. Co.) 223 U. S. 1, 51, 56 L. ed. 327, 346, 38 L.R.A.(N.S.) 44, 54, 32 Sup. Ct. Rep. 169, 1 N. C. C. A. 875.

Upon this record, we are of the opinion that it is immaterial whether the plaintiff be deemed at the time of his injury engaged in interstate or intrastate commerce. We are satisfied, upon the record, that if the

plaintiff's cause be considered not to fall within the terms of the Federal statute because not then engaged in interstate commerce, his cause of action as pleaded and proved, in any event, falls within the terms of the state statute (N. D. Laws 1915, chap. 207). This statute uses almost the same identical language as the Federal Employers' Liability Act, presumably copied directly from it, and changes only such language as is necessary for purposes of making it a law of the state.

The duties of the plaintiff as a night box packer involved acts as a part of, or to further and promote, either interstate or intrastate commerce. Necessarily, the same facts which would establish a liability of the defendant, for the injury sustained by the plaintiff, if then engaged in interstate commerce, would likewise establish a liability of the defendant under the state law cited, if the plaintiff was not then so engaged. If it be deemed that the plaintiff was not engaged in interstate commerce at the time of his injury, it is then fairly clear that his duties concerned and involved an engagement concerning commerce to which the regulative powers of the state applied.

But the defendant maintains that at the time plaintiff was injured the class of work which he was then performing may not be called railroad work proper, which is peculiarly hazardous in its nature, and that under the authority of Beleal v. Northern P. R. Co. 15 N. D. 318, 108 N. W. 33, the fellow-servant rule and the ordinary common-law defenses were available to the defendant.

This contention must be denied. The plaintiff's duties fall within the class of rail work proper,—"the business of running trains, keeping the tracks in repair, and other similar work connected with the use and operation of railroads." Beleal v. Northern P. R. Co. 15 N. D. 325, 108 N. W. 33, 11 Ann. Cas. 921, 20 Am. Neg. Rep. 453. This is a business of a common carrier engaged in commerce, whether interstate or intrastate. Fairly upon this record it may be said that the plaintiff was performing these duties in the course of his employment. See Gunn v. Minneapolis, St. P. & S. Ste. M. R. Co. 34 N. D. 418, 158 N. W. 1004.

The allegations in the complaint set up facts bringing plaintiff's cause of action within the terms of the Federal Employers' Liability Act, although the complaint does not in terms speak of a violation of such act. Such allegations also constitute a cause of action under the

state law if the Federal act does not apply. The court instructed the jury upon the theory that the Federal act applied. At the close of the case the defendants moved for a directed verdict upon grounds, among others, that the evidence showed that the plaintiff was not engaged in interstate commerce, that the defendant was deprived of the benefit of trying it under state laws, in force and effect at the time of the accident.

Again, after judgment was entered the defendant moved for judgment *non obstante*. It is apparent that the question of whether or not a railway employee is engaged in interstate or intrastate commerce frequently involves questions of great legal nicety. Questions of fact are propounded which often are questions for the jury. The defendant here made no request to have the jury find upon this particular question. Upon the facts as shown in the record the plaintiff had a cause of action either under the Federal act or state act. If the Federal act applied, it superseded the state statute. Wabash R. v. Hayes, 234 U. S. 86, 58 L. ed. 1226, 34 Sup. Ct. Rep. 729, 6 N. C. C. A. 224. If the Federal act did not apply the jurisdiction of the state law then became supreme. Corbett v. Boston & M. R. Co. 219 Mass. 351, 107 N. E. 60, 9 N. C. C. A. 691. The Federal act would apply even though the cause of action had been based upon the state law. Hein v. Great Northern R. Co. 34 N. D. 440, 448, 159 N. W. 14. In the complaint at bar it required only an elimination of the allegation that the plaintiff was then engaged in interstate commerce to state completely a cause of action under the state law. In this state, where the cause of action under the state law is practically identical with the cause of action under the Federal act excepting as the same affects commerce, there are evident reasons why, in the judicious expedition of litigation and the saving of expenses both to the parties and to the state, one trial should be had wherein the facts could be ascertained and the conflicting issues of the application of the Federal or state act determined in one action, where by so doing the defendant is not deprived of full opportunity to defend under either act. As a matter of justice the defendant was not entitled to foreclose the plaintiff's right of action under the state law if by reason of the conflicting evidence it was determined that the facts did not give rise to the application of the

Federal act.    Corbett v. Boston & M. R. Co. and Wabash R. Co. v. Hayes, supra.

In actions of this kind the method of determining the question of whether the employee was engaged in interstate commerce is a matter of state practice.    North Carolina R. Co. v. Zachary, 232 U. S. 248, 257, 58 L. ed. 591, 595, 34 Sup. Ct. Rep. 305, Ann. Cas. 1914C, 159, 9 N. C. C. A. 109.    It is apparent upon this record that the defendant's position in accordance with its defense interposed is not made worse, no matter whether the Federal act or the state law be applied. Chicago & N. W. R. Co. v. Gray, 237 U. S. 399, 59 L. ed. 1018, 35 Sup. Ct. Rep. 620, 9 N. C. C. A. 452.    In Kansas City Western R. Co. v. McAdow, 240 U. S. 51, 60 L. ed. 520, 36 Sup. Ct. Rep. 252, 11 N. C. C. A. 857, an action was brought in Missouri for injuries sustained by a motorman upon an electric car of the defendant; the original petition alleged negligence occurring in the operation of the car intrastate; an amendment was allowed alleging negligence of the defendant in violation of the Federal act.    The court held that the amendment introduced no fact inconsistent with those first alleged, and it was unnecessary when the facts were stated to invoke the act of Congress in terms; that the law governing the situation is equally a law of the state whether derived from Congress or the state legislature, and must be noticed by the courts.    The court further stated that the questions raised really are immaterial, since the Kansas statute is so similar to that of the United States that the liability of the defendant does not appear to be affected by the question which of them govern the case; that under such circumstances it is unnecessary to decide which law applies.    It is therefore proper in this state to determine, as a matter of practice, that when facts are alleged in a complaint which predicate a cause of action either under the Federal or the state Employers' Liability Act, recovery may be had under either act as the facts warrant, where the position of the defendant, upon the record, is not made worse by so doing.    Upon this record, therefore, a cause of action exists against the defendant regardless of whether the Federal act or the state act is made to apply if in fact its negligence has been sufficiently shown, as a matter of law, upon the evidence.

After a careful consideration of the evidence, we are of the opinion

that the question of defendant's negligence was fairly a question of fact for the jury.

The saw was an old saw. There it had been located for over twenty years. It had over it a home-made safety device which concededly was not always used by the man whose principal duty it was to operate the machine. The saw did not operate perfectly. The fact that it would slow up and that the belt would transfer from the live to the neutral pulley was known to the defendant by actual notice brought to its foreman, considerably prior to the time of this accident, when the foreman of the roundhouse gave his instructions to his men after a man had been hurt; the defendant then knew and realized its dangers. Under the evidence the effect of the saw slowing up and becoming dead or half dead while in the course of the operation of sawing is manifest. It became then a highly dangerous instrumentality.

The jury found that the safety device was defective, that the machinery was defective, and that the defendant was negligent in not more strictly enforcing its rules in the operation of the saw. Upon the whole record we are fairly satisfied that these questions of defendant's negligence were fairly for the consideration of the jury. It was the duty of the defendant, if he directed the plaintiff either expressly or impliedly to use this saw, to provide a saw reasonably safe in its condition and safety devices in connection therewith likewise reasonably safe. Under such circumstances the duty was likewise imposed upon the defendant, in the exercise of ordinary care, to give to the plaintiff instructions concerning the operation of such saw. See Harney v. Chicago, R. I. & P. R. Co. 139 Iowa, 359, 115 N. W. 886; Chilson v. Lansing Wagon Works, 128 Mich. 43, 87 N. W. 79; Umsted v. Colgate Farmers' Elevator Co. 18 N. D. 309, 122 N. W. 390; Warehime. v. Huseby, 38 N. D. 344, 165 N. W. 502; Cannon v. South Dakota C. R. Co. 29 S. D. 433, 137 N. W. 347; Latman v. Douglas & Co. 149 Iowa, 699, 127 N. W. 661. This court might well, upon the record, find for the defendant upon the question of fact, if this court were passing on the same as questions of fact. The jury, however, have determined these questions of fact; this court is bound by its determination. It therefore follows that the judgment of the trial court, sustained by the special findings of the jury, should in all things be affirmed.